| 43 | 445 |
| 151 | 469 |
| 152 | 113 |

## Kinter *et al. versus* Jenks *et al.*

*Construction of Will.—Estate in fee created by Devise.—Sheriff's Sale of unexecuted Land-warrant.—Conclusiveness of two Actions of Eject- ment for same Land.—What Papers may be sent out with Jury.*

1. A testator by will, after making specific bequests, left the residue of his estate to his wife " for her use and comfort and to be disposed of as she pleases, at or before her decease, when no doubt she will make such distribution of the same amongst our children, as she may then think most proper:" she afterwards devised the residue of her estate to a daughter, without, however, mentioning or referring to any power of appointment in her husband's will. In an action of ejectment for the lands by parties claiming under the daughter, *Held*, That the will gave an estate in fee simple to the wife, who had the right to dispose of property thus descended: and hence, her will was admissible in evidence in favour of the parties claiming under it.

2. An unexecuted warrant for land cannot be levied and sold under a *fieri facias* as the property of the warrantee: nor can a sheriff's sale of lands purporting to be in one county pass title thereto, when the lands were at the time in another: and therefore it was held not error, in an ejectment for land so claimed, to reject evidence of the sheriff's sale of the warrant.

3. Where two ejectments had been brought for parts of the same land, in one of which a verdict and judgment was rendered for the undivided moiety of a certain lot, and in the other, for the whole of the tract, the two verdicts and judgments are conclusive as to the moiety only, and are not a bar to a third ejectment between the same parties for the remainder of the land.

4. Where the refusal to permit a draft to go out with the jury, said to be testified to by witnesses named in the exception, was assigned for error, and the testimony contained no mention of the draft, the assignment will not be sustained because not supported by the record.

ERROR to the Common Pleas of *Jefferson county.*

This was an action of ejectment, by Mary H. Jenks and Anne H. Jenks, by their guardians, against Henry Kinter, Isaac P. Carmalt *et al.*, for three hundred and ninety-six acres of land, in Young township.

On the trial, the plaintiff showed title in Robert Morris, under an indescriptive warrant, dated March 5th 1793, and a survey of three hundred and ninety-six and three-fourth acres, to him, accepted January 11th 1819, and gave in evidence his will, proved June 16th 1804, by which, after several bequests to his children and others, he gave the residue of his property, real and per-

sonal, to his wife Mary, "for her use and comfort, and to be disposed of as she pleases, at or before her decease, when no doubt she will make such distribution of the same as she may then think most proper." They then offered in evidence the will of Mary Morris, widow of Robert Morris, proved February 1st 1827, in which, after sundry small bequests, she devised "all the rest, residue, and remainder of my estate, &c.," to her daughter, Mary Nixon.

This was objected to on the ground that the will of Robert Morris did not vest in his widow an estate in fee simple, but merely a life estate with a power of disposal, and that the will of Mary Morris was not in execution of the trust, but a devise to Mary Nixon of her own property.

The court below admitted the will, but reserved the point, and the trial proceeded.

The marriage of Mary Morris to Henry Nixon, March 4th 1824, and his death, were admitted.

The plaintiffs then gave in evidence deed from Henry Nixon and Maria his wife to Elijah Heath, January 23d 1839, for one thousand acres, including this land. Deed of Elijah Heath and wife to D. B. Jenks, February 6th 1846, and deed of confirmation from Mary Nixon to Elijah Heath, September 12th 1846. It was admitted that Mary H. and Ann H. Jenks were the only heirs of D. B. Jenks, deceased.

This was followed by the record of an ejectment, brought April 4th 1839, by Elijah Heath against Adam Long *et al.*, for four hundred acres of the land included in warrant to Robert Morris, in which there was a verdict and judgment for the plaintiff. They also gave in evidence the record of a *scire facias* on the above to February Term 1845, in which there was a judgment and a writ of *habere facias*, on which the property was delivered to D. B. Jenks, who remained in possession until his death in 1848.

The plaintiffs having closed their case, the defendants offered to show that while the warrant to Robert Morris was in the deputy surveyor's office, in Northumberland county, Sheriff Vanderslice had levied on and sold the interest of Robert Morris in the warrant to Thomas Grant, whose executors conveyed to W. P. Brady, by whom a survey of three hundred and ninety-six and three-fourth acres was procured January 11th 1819, and which was patented to Ephraim Carpenter February 4th 1832, all which was rejected by the court on the authority of Heath *v.* Knapp, 10 Watts 405.

The defendants also relied on a settlement made on this land by Adam Long in 1818, which it was averred was continued at first in his own right, next under the defendant Kinter, alienee of Carpenter, and after the *habere facias*, issued by D. B. Jenks as

[Kinter *et al. v.* Jenks *et al.*]

his tenant, until a recovery by Kinter against Adam Long, in which Jenks was admitted as co-defendant in 1850 of twenty-two acres, where said Long remained under an arrangement with Kinter until his death.   They also offered testimony to prove that part of the land outside of the piece occupied by Long was un-seated in 1842 and 1843, which was followed by an offer of the record of the action of ejectment by Kinter against Long for forty-four acres, and an action by the present plaintiffs against Kinter and Long for these forty-four acres, in which there was a verdict for the defendants, as a bar to a recovery in this suit, which offers were rejected by the court below.

The defendants requested the court to charge the jury,

1. That if they believed that Adam Long commenced his set-tlement before the survey under which the plaintiffs' claim was made, and followed it up with due diligence, the title of the de-fendants refers back to he first act done on the ground, and their title must prevail.

2. That as the survey under which the plaintiffs claim was not returned to the surveyor-general's office within six months after it purports to be made, his title must be postponed to the de-fendants if the jury are satisfied Adam Long was living on the land, or had improved on it as early as the 10th January 1819.

3. That as it is admitted that there have been two verdicts, judgments on the same title for the land in controversy in favour of the defendants, that fact is conclusive against the plaintiffs in the present action, and the verdict should be for defendants.

4. That if there was a part of this tract unseated in the years 1842 and 1843, outside of the piece occupied by Long, and what Kinter had sold before that, the tax title would pass the interest of any person who might have had title to the same.

Which points were answered as follows:—

"We answer the defendants' first point in the affirmative, if you find the facts as therein alleged,

"We answer the defendants' second point in the negative.

"We answer the third point in the negative, subject to the ex-planation contained in our answer to plaintiffs' sixth point.

"We answer the fourth point in referring to our answer to the fifth and sixth points of plaintiffs."

As the jury were about to retire, the defendants proposed to send out a draft made by William P. Brady, showing an alleged sub-division of the survey to Robert Morris, which the court refused to allow.

Under these instructions there was a verdict and judgment for plaintiffs; whereupon the defendants sued out this writ, and assigned for error the following matters, viz.:—

1. The court erred in receiving the will of Mary Morris in evidence, because there is nothing in that will that showed that

she intended to exercise the power of appointment conferred by the will of Robert Morris; the testimony was irrelevant.

2. The court erred in rejecting the evidence offered by the defendants to show a sale by Sheriff Vanderslice of the warrant to Robert Morris, No. 3738, to Thomas Grant, and the transfer by his executors.

3. The court erred in their answer to the third point of the defendants, as follows :—" We answer this point in the negative, subject to explanations contained in our answer to plaintiffs' sixth point," in which they say, " It being admitted that both ejectments were for the same land, and in the first a verdict and judgment was rendered for the undivided half of the Long lot, and in the second, No. 18 September Term 1850, verdict and judgment rendered for the defendants, being the present defendants, for the whole; there are two verdicts and judgments in favour of Long for the undivided one-half of forty-four acres, and as to that undivided moiety, your verdict should be for the defendants ;" which answers are erroneous, as the court should have instructed the jury that their verdict should be in favour of the defendants for all the land.

4. As some of the witnesses, particularly Charles Hutchison and James Caldwell, gave testimony in connection with the draft of W. P. Brady, as to that portion of the land which was unseated, that draft should have been suffered to have gone with the jury, as without that the jury could not see the application of their testimony, and there was error in refusing to let the draft go out with the jury.

*Th. White* and *D. Barclay*, for plaintiffs in error.

*P. W. Jenks* and *J. G. Gordon*, for defendants in error.

The opinion of the court was delivered, January 5th 1863, by READ, J.—The cases of Heath *v.* Knapp, 10 Watts 405, and 4 Barr 228, dispose of all the points in this case but one.    The last-named case decided that Robert Morris, by his will, gave his wife an estate in fee simple, which was the clear and uncontested meaning of that instrument, and unaccompanied by any trust whatever : Pennock's Estate, 8 Harris 268.    The first case disposed of the claim under Grant, by a sheriff's sale of the warrant in 1802, in Northumberland county, on two grounds : First, that the sale passed no interest to the grantee, inasmuch as the lands called for in the warrants were not at the time in the county of Northumberland.   Secondly, that an unexecuted warrant for land is not the subject of levy and sale as the property of the warrantee under a *fieri facias*.   This is a sufficient answer

[Kinter *et al. v.* Jenks *et al.*]

to the two first errors assigned, and the fourth error is not supported by the record, for the draft is not mentioned in the testimony of James Caldwell.

The only other question appears too plain for argument. In two ejectments for this land an undivided moiety of forty-four acres was recovered in the first, and in the second there was a verdict and a judgment for the defendants, the present plaintiffs, for the whole. The court properly charged the jury that these two verdicts and judgments were only conclusive as to the undivided moiety; in which we can see no error. To form a bar to a third ejectment, the two former ones must be for the *same land* upon the same title: Mercer *v.* Watson, 1 Watts 344; Drexel *v.* Man, 2 Barr 267, 271; and it is certain, therefore, that in this case only an undivided moiety of the forty-four acres had been twice decided to be the property of the defendants.

Judgment affirmed.