# Presbyterian Board of Foreign Missions *v.* Culp, Appellant.

*Wills—Life estate—Precatory words.*

A devise of a farm to be used by the devisee for her own personal benefit, was followed by this clause: " N. B. After the decease of (the devisee) I desire that my interest in the said above mentioned farm, together with all interest accruing therefrom, shall be appropriated to foreign missionary work."

*Held,* that the " N. B." clause was testamentary and imperative and not precatory, being words of recommendation or request used in direct reference to the estate; and that the will gave only a life estate to the devisee.

*Charitable devise—Defective designation—Parol evidence—Equity.*

It seems that the defective designation in such case might be repaired

151  467
176  135
151  467
186  407
151    466
206    529

by parol proof, and that the court might carry into effect the intent of the donor, so far as the same could be ascertained, under the act of April 25, 1855, P. L. 331.

Argued Oct. 4, 1892. Appeal, No. 2, Oct. T., 1892, by defendant, Wm. Culp, from judgment of C. P. Westmoreland Co., May T., 1889, No. 64, on verdict for plaintiff. Before STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Ejectment against tenant of heirs of Harriet E. J. Elder, and case-stated.

The case-stated agreed upon the following facts, among others : Harriet E. J. Elder made her will wherein she provided as follows : " After providing for my necessary funeral expenses, I do give and bequeath my mother Mary Elder, all my personal effects whatsoever, and also all my right, title, interest and claim of and to our farm, together with all monies interests of whatsoever character or kind accruing therefrom, to be used by her for her own personal benefit."

The following clause was written by one of the subscribing witnesses below their signature, and was signed by Mrs. Elder when she signed the previous part of her will : " N. B. After the decease of my mother, Mary Elder, I desire that my interest in the said above mentioned farm, together with all interest accruing therefrom shall be appropriated to Foreign Missionary Work."

Mary Elder by her will devised her interest in the farm to plaintiff. Defendant is tenant under heirs at law of Harriet Elder.

The court in an opinion entered judgment for plaintiffs. Defendant appealed.

*Errors assigned* were (1) entering judgment for plaintiffs, quoting the decree ; and (2) not entering judgment for defendant.

*Paul H. Gaither, J. A. Marchand* with him, for appellant, cited Kline's Ap., 86 Pa. 363 ; Fox's Ap., 99 Pa. 382 ; Oyster v. Knull, 26 W. N. 449 ; Grim's Ap., 89 Pa. 333 ; France's Est., 75 Pa. 220 ; act of April 8, 1833, P. L. 249.

*John D. Gill,* with him *A. W. Taylor* and *John N. Banks,* for appellee : 1 Jarman, Wills, 176 ; Bowlby v. Thunder, 105

Pa. 175; Sheetz's Ap., 82 Pa. 213; Burt v. Herron, 66 Pa. 400.

OPINION BY MR. JUSTICE STERRETT, October 31, 1892.

The question submitted for decision in this case is, whether the estate given by Miss Elder to her mother was in fee or for life; and its solution was made to turn largely upon whether the so-called " N. B." clause, contained in the will, was or was not precatory. It was conceded that if the words used were precatory the estate given was in fee.

Precatory trusts do not prevail in Pennsylvania; but what are precatory words is a material question in this case, and can only be satisfactorily determined by reference to the origin and nature of precatory trusts. It was part of the Roman law that the devisee or legatee, accepting the estate of a decedent, became at once personally charged with the payment of all his debts whether the estate was sufficient to discharge them or not; and by way of compensation it was made discretionary with him to pay any of the legacies bequeathed by the testator. Hence when all such bequests could be thus defeated at the pleasure of the devisee or legatee, there was no alternative left to the testator but to incorporate in his will an appeal to the devisee or legatee to make the desired disposition: Pennock's Estate, 20 Pa. 268. The hardship of this law finally compelled the courts to declare that words of recommendation, request, entreaty, wish or explanation, addressed to the devisee or legatee will make him a trustee for the person or persons in whose favor such expressions are used: 1 Jarman on Wills, 385. Whence precatory trusts.

It will readily be seen that a distinguishing characteristic of such trusts is that they arise, not by direct reference to testator's estate, but by appeal to the discretion of the devisee or legatee. This is true of all the numerous cases of precatory trusts cited in Jarman, and Hawkins on Wills, and in our own cases from Pennock's Estate down. Thus in the case last cited, the estate is given to the widow, " having full confidence that she will leave . . . .;" in Kinter v. Jenks, 43 Pa. 445, " no doubt she will make such distribution . . . .;" in Church v. Disbrow, 52 Id. 219, " It is my wish and desire that my said wife will leave . . . .;" in Hopkins v. Glunt, 111 Id. 287,

" My further request is that she will so divide what she may leave," etc.

Where however words of recommendation, request, and the like are used in direct reference to the estate, they are prima facie testamentary and imperative, and not precatory. Thus, should the testator say merely " I desire A. B. to have one thousand dollars," it would be as effectual a legacy as if he was expressly to direct, or will it, or were to add, " out of my estate," or that it should be paid by his executor. The reason is obvious. A will, in its very nature, is the disposition which the testator desires to have made of his estate after his death. All the expressions indicative of his wish or will are commands. It is different when, having made a disposition, he expresses a desire that the legatee or devisee should make a certain use of his bounty: Burt v. Herron, 66 Pa. 400.

In view of this statement can it be said that the clause in question is precatory?

Mrs. Elder was given an estate for her own personal benefit; but testatrix immediately follows this by a direct expression of desire that her (my) interest in the farm and the accrued profits should be appropriated to missionary purposes " after the decease " of Mrs. Elder. There is no express power, direction or discretion given, or request made to Mrs. Elder to appoint. The gift to her is simply and solely for her own personal benefit. The manifest purpose was in the first instance to give her a life estate ; and it is just as clear that after her decease testatrix intended the estate should be devoted to foreign missionary work. The " N. B." clause contains an independent and direct gift. The first purpose has been carried out: why not the second ? The testatrix's expression of desire is a command.

" Foreign missionary work " has innumerable channels and objects : and it cannot be that testatrix used the expression in this general sense, because it would be utterly impracticable to carry her purpose into effect. What then was her intention ?

" It has long been settled that a defective designation, by the devisor, of the legatee intended, may be repaired by parol proof. If the person to take be not in some sort described in the devise, evidence will not be permitted to show who was intended, for that would be to make a will by parol; but when

there are words of designation, though a mistake in the name, the ambiguity may be removed by evidence dehors the will:" Newell's Appeal, 24 Pa. 197. Here the legatee is in "some sort described," but the designation is defective; and logically, parol evidence is admissible in aid of the interpretation of the will to show what "foreign missionary work" was meant by this testatrix. That is obviously the appropriate kind of evidence which shows what influence induced the gift. Thus in Missionary Society's Appeal, 30 Pa. 425, Mr. Justice Strong said that the auditor below had "properly called to his aid parol evidence to show the situation in which the testator stood when he made the bequest under consideration." To the same effect is Cresson's Appeal, Id. 437. The value of such evidence will necessarily vary with each case; but that it will, in general, aid interpretation in such cases cannot be doubted.

What were Miss Elder's relations to church and charity, what her declared purposes, if any, we have not been informed; nor is it necessary that we should be. Her intended charity lapsed because her will was not executed thirty days before her decease. Our object is to show that merely a life estate was given to her mother, and that she intended to devote the remainder to a charity that might have been executed, if she had not died so soon after making her will.

That the court of common pleas has jurisdiction to carry into effect such bequests seems clear. Whenever a general but vague charity is disclosed, an English chancellor upholds the bequest but applies the fund to a charity of the same kind, if the meaning of the bequest can be discovered; if not, then according to a scheme of application reported by a master: Pickering v. Shotwell, 10 Pa. 25. Thus in Mills v. Farmer, 1 Meriv. 55, a testator directed the residue of his estate to be divided for promoting the gospel in foreign parts and in England; and Lord Eldon established a trust and directed it to be carried into effect. Whatever doubt may have existed here as to the jurisdiction of courts of equity in Pennsylvania, in such cases, was removed by the act of April 26, 1855, P. L. 331, which declares "no disposition of property hereafter made, for any religious or charitable use, shall fail for want of a trustee, or by reason of the objects being indefinite, uncertain, or ceas-

ing, . . . but it shall be the duty of any orphans' court or court having equity jurisdiction, to carry into effect the intent of the donor or testator, so far as the same can be ascertained and carried into effect consistently with law and equity."

If Miss Elder's intended charity had not failed, it is not at all probable that there would have been any serious difficulty in carrying it into effect.

Our conclusion is that the " N. B." clause of the will is testamentary in its character, and that the learned court erred in holding that testatrix's mother took a fee in the land devised to her.

Judgment reversed, and judgment on the case-stated is now entered in favor of the defendant.