**Rose Estate**

*Richard L. Grossman, Cuthbert H. Latta* and *Charles E. Wolf,* for petitioner.

*Desmond J. McTighe, McTighe, Koch, Brown & Weiss* and *Blank, Rome, Klaus & Comisky,* for respondents.

TAXIS, P. J., April 16, 1970.—This matter comes before the court upon the petition of Jack Rose, one of the three coexecutors of the will of Max Rose, deceased, requiring his coexecutors to show cause why the operation of Northern Metal Company should not continue as prescribed by the will. An answer was filed by the two coexecutors and the matter then came on for hearing on March 24 and 25, 1970.

Max Rose died on April 14, 1968, leaving a will dated July 19, 1962, which was duly probated on April 29, 1968. By his will, decedent named the Philadelphia National Bank, Jack Rose, the petitioner, and his daughter, Mary Rose Howard, as executors and trustees and letters testamentary were duly granted. At the time of his death, decedent was survived by his widow, Clara Rose, his son, Jack Rose, and his two daughters, Mary Rose Howard and Doris Greenstone. In broad outline, decedent, by his will, provides for marital trust income to be paid to the widow subject to a general power of appointment by will and the residue is divided into three separate residuary trusts for his three children with income for life to the three

children and remainders to their issue. On the basis of figures tentatively arrived at for Federal estate tax purposes, the marital trust will be approximately $5,550,000 and each of the three residuary trusts will be approximately $883,000.

The principal asset of the estate consists of the entire capital stock of Northern Metal Company of Philadelphia, whose business broadly is shipbreaking and the operation of a marine terminal. For Federal estate tax purposes, the stock has been valued at approximately $11,200,000.

In article XI, clause 12, paragraphs (c) and (d) of his will, decedent dealt with his stock of Northern Metal Company as follows:

"(c) If my son, JACK ROSE, survives me, it is my wish and desire that my said son will be retained by my Executors and Trustees to manage and operate NORTHERN METAL CO. as its chief executive officer after my death. It is, therefore, my further desire that my Executors and Trustees retain all of the rest of my stock in said company for a period of at least Three (3) years following my death [i.e., until April 14, 1971], and thereafter for so long as in their judgment the company is being satisfactorily operated. However, I do not direct that my Executors and Trustees retain said stock, if after due consideration to my wishes they do not regard my intentions thereof for the best interests of my estate and I relieve my Executors and Trustees from all liability of the exercise of their discretion in this connection. If my stock in NORTHERN METAL CO. does not produce dividends or if its yield is less than what might be expected from other investments, my Executors and Trustees shall not incur any liability if they, in their sole discretion, determine to continue to hold such stock as an investment.

"(d) If my Trustees determine that any or all of the outstanding capital stock of NORTHERN METAL CO.

shall be offered for sale, I direct that my son, JACK ROSE, shall be given a reasonable opportunity to purchase said stock or any part thereof upon the same terms and conditions as any bona fide offer then made to my Trustees provided that my Trustees are agreed that such offer is otherwise acceptable."

Since the death of decedent, Jack Rose has been president of Northern Metal Company and in the capacity of chief executive officer has managed and operated the company since decedent's death.

The pleadings and testimony present a question for determination concerning the meaning of the language above quoted and other relevant provisions of the will. Jack Rose, petitioner, states that although the language used by decedent was "my wish and desire," the language of the will is mandatory and requires that the executors retain petitioner to manage and operate Northern Metal Company as its chief executive officer. The two respondent coexecutors vigorously argue that the language is merely precatory and that they, as coexecutors, have fiduciary responsibilities requiring them to participate in the management and operation of the company which they seek to accomplish by election of a new board of directors and by enactment of a new set of bylaws, and changing authority over bank accounts of the company. They thereby seek to shift the management and operation of the company from Jack Rose to the new board of directors.

Petitioner averred that the shifting of the management as contemplated by respondents would visit irreparable harm and damage to the estate. After a conference with counsel, the court entered a restraining order on March 3, 1970, restraining the election of the new board of directors and a new set of bylaws and directing that the matter be listed for hearing and argument on March 24 and 25, 1970. A full hearing

was held, and at the end of said hearing a colloquy that ensued between the court and counsel impressed the court that a number of problems revealed by the testimony could be solved or compromised within a short time. The court continued the matter until Wednesday, April 8, 1970, at 1 p.m., for the court to consider whether Jack Rose should enter a bond and, if so, in what amount, and further to rule on the legal question presented.

## MANDATORY OR PRECATORY?

Scott on Trusts, §126.3, contains an excellent summary of the cases relating to employment of a designated person by a testator:

"It is not uncommon for a testator in creating a trust to provide for the employment by the trustee of a designated person in some capacity in the administration of the trust. The litigated cases involving questions of the rights thereby created are not numerous, owing doubtless to the fact that the trustee usually complies with the testator's directions. There are, however, a number of cases where the trustee has refused to do so, and the question has arisen whether the designated person has rights which he can enforce.

"In most of the decided cases the testator used language which was precatory rather than mandatory, and it was held that the testator did not intend to impose a legal obligation upon the trustee to employ the designated person. In these cases the provision as to the employment has no legal effect, except perhaps to make it proper for the trustee to employ the designated person when, in the absence of such a provision, he might not have been authorized to employ him.

"If the words used by the testator are mandatory, however, a more difficult problem arises. The first question which presents itself is whether the duty to

employ the designated person was intended to be for the benefit of the beneficiaries or for the benefit of the designated person or for the benefit of both. The testator may have made his selection not because he wished to benefit the person but because he thought that to employ him would best promote the administration of the trust and thus promote the interests of the beneficiaries. In such a case the designated person, although he might benefit by the employment, is not a beneficiary of the trust and has no standing to compel the trustee to employ him. The failure of the trustee to comply with the testator's directions, if such directions are obligatory upon him, may conceivably render him liable to the beneficiaries but does not render him liable to the person whom he was directed to employ."

A leading case in Pennsylvania is Hand's Estate, 315 Pa. 238. In that estate, the will contained the provision "*I request* my executor . . . to employ my son, as far as it finds he can be of benefit to my estate, . . ." In holding that this language was mandatory rather than precatory, the court said, at page 244:

"*We do not consider as precatory the request in the will* and the letter that the executors employ the son. *In the light of the relations which existed between the father and son and their past business connections, it was a positive direction.* 'It is uniformly held that words of recommendation, request, wish or expectation addressed to the executor and used in respect to the direct disposition of the testator's property are prima facie testamentary and imperative rather than precatory in effect, on the ground that the testator, having a right to make such a disposition of his property as he thinks proper, the expression of his wish is deemed to be the expression of his will and the request is equivalent to a command': 49 Amer. Law Reps. Annotated 31; Presbyterian Board of Foreign

Missions v. Culp, 151 Pa. 467; Edwards Est., 255 Pa. 358; Stinson's Est., 232 Pa. 218. There is nothing in Lindsay's Est., 311 Pa. 536, in conflict with the rule laid down in the cited authorities." (Italics supplied)

In Walker Estate, 21 D. & C. 2d 512, this court reviewed a number of cases on this subject, and concluded that this issue must be determined with reference to the user's overall intent. In that case, words which were precatory in form were held mandatory, because consideration of other language in the will made it clear that testator's overall intent was to direct, not request.

We believe that Hand's Estate controls this matter at the present time. To whatever extent this excludes respondents from participating in the management and operation of the company, it relieves them of liability for not doing so. In addition, the exact language in Hand's Estate, while held to be mandatory, only required the employment of decedent's son ". . . as far as (the executor) finds he can be of benefit to my estate, . . ." Here, testator has expressed the same general intention, in our opinion, in article XI(12)(c) of the will, where the executors and trustees are directed to retain the Northern Metal Company stock owned by the estate for three years ". . . and thereafter for so long as in their judgment the company is being satisfactorily operated." Although corresponding language is not used in the direction to employ Jack Rose, it is evident that testator could not divorce the employment of his son by the executors from their ownership of the company's stock. Unlike the validity of bequests or other issues which at times arise concerning the meaning of testamentary language, the employment of Jack Rose is a continuing matter and relationship, and is conditioned upon his satisfactory operation of the company.

In this connection, moreover, the present record

does not warrant the conclusion that decedent directed or intended that Jack Rose have the same powers over Northern Metal Company as did decedent. For all practical purposes, the authority and power of Max Rose over the company was absolute. As was natural from the circumstances of his founding and development of this company and his ownership of all of its stock, Max Rose held all of the functions and power, not only of a chief executive and operating officer, but also of a board of directors. But Jack Rose does not own the company and derives his authority only from his father's will. Decedent's designation of Jack Rose as the "chief executive officer" of the company limits his functions and powers to those normally associated with such a position. It would be going too far here to hold that Jack Rose had been given the power to compel the election of a board of directors solely of his own choosing, or to require a properly elected board to exercise its powers as he saw fit.

In his brief, petitioner contends that the testamentary language here in issue requires the executors and trustees to vote their stock only in such a fashion that Jack Rose may ". . . chart the course to be pursued by the corporation, just as the testator had done during his lifetime, . . . ." As noted, we reject the contention as stated. If testator had intended Jack Rose to inherit all of his power and authority, he could have said so. Petitioner further asks us to direct the executors to create a board of directors of five members, three of whom would be selected by Jack Rose. He also suggests that we might direct that this board approve all expenditures or contracts in excess of a stated sum. Petitioner argues, moreover, that testator did not intend the board of directors to be more active after his death than during his lifetime; but the testamentary language used by him and

his appointment of his wife and daughter along with Jack Rose as executors, must be given its normal and proper legal effect. We decline all these invitations to prescribe in detail now how the corporation is to be organized and operated henceforth. As it stands, the business is soundly managed and successful; there is no suggestion of illegal or improper actions by any party concerned with it. There are, in short, no sound grounds on which a court of equity could substitute its judgment or power for those of the owners of the corporation, and this will remain so until it clearly appears that those persons cannot solve their present differences within the framework of the corporate organization.

Respondents have vigorously argued the need for an injunction bond under Pa. R. C. P. 1531, which they contend is applicable to proceedings in this court. Respondents further contend that this bond should be for $4,000,000, which, apparently, is approximately the amount of quick assets of the Northern Metal Company over which Jack Rose has control. We reject this contention. First, the order issued by this court related to a dispute between cofiduciaries over which we have complete control according to the provisions of section 301(6) of the Orphans' Court Act of August 10, 1951, P. L. 1163, sec. 301, 20 PS §2080.301. This court, even of its own motion, can preserve the status quo during litigation in such circumstances, and, here, a substantial issue had been raised as to the meaning of testamentary language. Even if the entry of a bond had been appropriate, the amount suggested by respondents would have been unreasonable. According to Pa. R. C. P. 1531(b)(1), the condition of an injunction bond is to insure ". . . to any person injured all damages sustained by reason of granting the injunction. . . ." Moreover, respondents agreed that this was not intended to be a fidelity

bond. Where there is no reason to believe that a corporation would suffer by a preliminary injunction which continues a highly and uniformly successful management, only a modest bond would be required in any event: Roth v. Columbia Distributing Company of Allentown, 371 Pa. 297, 307. And, the entry of a final order now dissolves the original temporary restraint, and it would, therefore, be pointless to require a bond.

After consideration of the evidence, arguments and applicable law, the court concludes that the language in question is mandatory, and that testator intended that Jack Rose occupy a position as chief executive officer of Northern Metal Company as long as he operates the company satisfactorily. Respondents, the Philadelphia National Bank and Mary Howard, are restrained from taking any steps or actions inconsistent with the direction in testator's will that Jack Rose manage and operate Northern Metal Company as its chief executive officer.