Foerderer et al., Appellant, *v.* City of Philadelphia.

Argued October 10, 1933. Before
TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER and JAMES, JJ.

*Marc Billett,* for appellant, cited: County of Lancaster v. Y. M. C. A., 92 Pa. Superior Ct. 514.

*Theodore F. Jenkins,* Solicitor for the School District, and with him *Mayne R. Longstreth,* Assistant City Solicitor, and *David J. Smyth,* City Solicitor, for appellees, cited: Thiel College v. Mercer Co., 101 Pa. 530; 53 Pa. S. C. 388.

OPINION BY TREXLER, P. J., February 1, 1934:

This is a proceeding in equity praying for an injunction to restrain the defendants, the City of Philadelphia and its School District, from collecting taxes assessed against a portion of the real estate held by the trustees of the Medical Research Foundation at Frankford, Philadelphia.

In 1928, a piece of land located in that section was conveyed to the unincorporated society bearing the above name. The object for which the society was founded is concededly for the furtherance of a very commendable public charity. The proper city authorities excepted half of the property from taxation, but assessed taxes against the remainder. The association claims exemption for the whole area, alleging that the entire property, including the portion taxed, is devoted to charitable uses. The evidence shows that the part taxed is used solely for the purpose of raising dandelions, carrots and some hay for feeding animals

which were used by the plaintiff for experimental work. It is uncultivated except as to a small portion on which carrots are raised. The use of such animals is a necessity in the research work maintained by the institution and the argument is that as they must be fed, the land that contributes to the raising of some of the food which they require, is exempt from taxation.

Article IX, Section 1, of our State Constitution allows the legislature to exempt from taxation institutions of purely public charity. In the exercise of this power, the general assembly has passed various acts, the last on April 30, 1925, P. L. 388, which, Section 1, as in preceding acts, applies the exemption, inter alia, to "institutions of learning, benevolence or charity with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same."

As was stated in White v. Smith, 189 Pa. 222, 42 A. 125, and in other cases, it is often a difficult and perplexing duty to determine whether the exemption applies or not. No hard and fast rule adapted to the varying facts of the different cases can be confidently laid down.

The extent of land to be embraced in the activities of a charitable association must be largely determined by the governing board. It is not for the courts to substitute their judgment for that of the directing officers of the institution, but the land embraced within the limits acquired must be *reasonably* necessary for the accomplishment of the purposes of the association.

Having this distinction in mind, we must sustain the judgment of the lower court refusing to allow the exemption from taxation. It is true that the animals used by the association must be fed, but the raising of the food or the allowing of a greater portion of land to grow wild in order to afford a supply of dandelions, we think is not sufficient to bring it within the exemption. The court below thought it unreasonable

that such food should be raised upon a piece of ground worth $40,000. It can easily be inferred that in the future, the association may require the additional land for its purposes, but we must in this case in order to sustain the position it assumes, find that what is to a great extent an uncultivated piece of ground and incidently furnishes some food that can be fed to animals becomes thereby exempt.

The raising of food for the rabbits and other animals used by the plaintiff is not reasonably necessary to the carrying on of the work of the association. If we were to hold that a charitable institution can secure exemption from certain property by deriving therefrom some article which is used by the association, the door would be opened wide and the recognition of such fact as being sufficient to secure exemption would rise up to plague us hereafter. By the same process of reasoning, a hospital might secure exemption of an adjacent field because some simples might be allowed to grow on it from which extracts might be obtained and administered to some of the patients. Or to use an illustration used by the learned chancellor who heard the case: ''We think also it is far-fetched to say that the charity needs animals, animals need food, and food requires land. On the same theory they could build a factory, free from taxation, to make their lances; or they could build a cloth mill to make the clothing for the surgeons.''

Two very recent cases of this court are cited in support of appellant's contention: Lancaster County v. Y. W. C. A., 92 Pa. Superior Ct. 514, 518; U. P. Women's Assn. v. County of Butler, 110 Pa. Superior Ct. 116, 122. In the Lancaster County case, the purpose of the association was to improve the physical, social, intellectual and spiritual condition of young women and the question of acquiring a camp in furtherance of the said purposes and its extent were primarily to be determined by the governing board

and it was held by our court to be exempted. That case lends no support to plaintiff's claim. In the case of U. P. Women's Association, it will be noticed the area exempted was a farm which was acquired and used as an orphans' home; 150 acres of the land was used as a garden and supplied in part the food for the children and some of the work thereon was done by the children. "The evidence shows that the institution was removed from the streets of a busy and congested city that they might have the healthful surroundings of the country. In promoting the development of the children, it was very proper that they should be placed in an atmosphere where an important life work was being carried on and some of them might have a part in the work. Men and women were busy and were engaged in producing the necessities of life. That such surroundings are conducive to the production of good citizens with sound bodies and clean minds is recognized by all authorities and is a matter of common knowledge. While there is not any evidence as to the precise manner in which the children use this property, it goes without saying that the fields and woods are suitable for camping, study of nature, playing of games, and other recreational purposes."

In the writer's view, an important feature of that case which differentiates it from the present is that the presence of the farm and its activities in which latter the children *participated*, contributed to furnishing the proper environment for them and were reasonably essential to their well being. In the other cases relied upon by the appellant, the land exempted was used for the comfort and enjoyment of the inhabitants of the institution involved which of course presented an entirely different situation from the present one.

The decree of the lower court is affirmed; the appellant to pay the costs.