West Indies Mission Appeal.

Argued September 25, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*J. S. Simpson,* with him *Fisher, Ruddock & Simpson,* for appellant.

*Earl R. Handler,* with him *G. S. Parnell* and *Parnell, Handler & Malcolm,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, January 17, 1957:

The question in this appeal is whether an exemption from local property taxation under §202, Art. II, of the Act of May 21, 1943, P. L. 571, should be granted to a missionary society whose beneficiaries live outside of the United States.

The relevant portions of §202, Art. II, of the Act of May 21, 1943, 72 PS §5453.202, are: "(a) The following property shall be exempt from all county, borough, town, township, road, poor, county institution district and school (except in cities) tax, to wit: (1) All churches, meeting-houses or other regular places of stated worship, with the ground thereto annexed necessary for the occupancy and enjoyment of the same . . . (3) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence or charity, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose . . . (b) Except as otherwise provided in clause (11), subsection (a) of this section [pertaining to libraries], all property, real or personal, other than that which is in actual use and occupation for the purposes specified in this

section, and all such property from which any income or revenue is derived, other than from recipients of the bounty of the institution or charity, shall be subject to taxation, except where exempted by law for state purposes, and nothing herein contained shall exempt same therefrom.".

The above section was enacted under the authority of Article IX, Section 1, of the Constitution of Pennsylvania, which reads: "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws; but the General Assembly may, by general laws, exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used or held for private or corporate profit, institutions of purely public charity, and real and personal property owned, occupied, and used by any branch, post, or camp of honorably discharged soldiers, sailors, and marines.".

The appellant, West Indies Mission, is a domestic non-profit corporation dedicated to training and sending out missionaries to the West Indies, some one hundred and eighty of whom are currently providing medical services, broadcasting religious programs and otherwise performing the manifold functions associated with missionary work. All of the activities of the Mission are financed by voluntary contributions from individuals and groups of varied denominations. There is no question as to the bona fides of the organization.

Recently the West Indies Mission has come into ownership and possession of some 925 acres of land in Brushvalley Township, Indiana County, Pennsylvania, which are being used to house the headquarters of the organization, indoctrinate new missionaries,

house families of missionaries in the field, house missionaries themselves who are home on rehabilitative leave,[1] hold conventions and meetings of those interested in the Mission's work, and a portion of which is used as a farm worked by the members of the Mission themselves, the produce of which is used by them or sold to help defray the expenses of the headquarters. A certain part of the land was rented out, but that segment is not here in dispute.

Early in 1952, the West Indies Mission filed an application with the Board of Tax Assessment and Revision of Taxes of Indiana County asking that all of its 925 acres[2] be removed from the assessments and that it be placed on the list of exempt properties. This application was contested by the Supervisors of Brushvalley Township and the School District of Brushvalley Township. A hearing was conducted by the Board, and it determined that only 117 acres of the property should be exempt from taxation.

Upon appeal by both sides, the Court of Common Pleas of Indiana County took testimony and received briefs. On March 2, 1955, it entered a decree sustaining the appeal of the Township and School District.

---

[1] One of the court's findings of fact was: "8. The Mission has concluded that its missionaries can function best when given a one year furlough after four or five years service in the field. This conclusion has been reached as the result of experience and the furloughs are required because most of the active missionaries must constantly take drugs to prevent or control malaria, their diet is inadequate, their drinking water impure, and their living conditions difficult. In addition, the schooling facilities for children of missionaries in the field are grossly inadequate."

[2] It appears that at the beginning of 1952 a small part of the property was rented out, but that later in the year the West Indies Mission came into complete possession, which it has retained to date. Appellant conceded that this rented portion was not entitled to an exemption.

In his opinion, President Judge CREPS, applying the so-called "quid pro quo" theory, held that though there can be no doubt of the worthy object of the Mission, it had failed to show that it is a "purely public charity" because the recipients of its benefits are not residents of this Commonwealth, and therefore the charity was not performing "some moral obligation that the government owes its people", nor does it "lessen the burden of government". Accordingly, the Mission was denied any real estate tax exemption.

The Mission then appealed to the Superior Court, which again applied the "quid pro quo" theory in affirming the court below. We allowed this appeal by the West Indies Mission from the decision of the Superior Court, reported at 180 Pa. Superior Ct. 216, 119 A. 2d 550.

In our discussion of the case we shall treat with the primary issue of whether the West Indies Mission is a charitable entity entitled to an exemption under the Act of 1943. The Superior Court and the court below found that it was not, and their opinions denied the exemption on the basis of their determination of that issue. If the West Indies Mission is a charitable entity entitled to an exemption, then it is necessary to make the further determination of how much of its real estate is devoted to charitable *use* and is therefore entitled to exemption.[3]

As to the primary issue concerning the charitable character of the West Indies Mission, two questions may be posed: First, would the Mission qualify for an exemption under our statute, assuming that all of its beneficiaries were residents of this Commonwealth? Second, should a charitable entity, which otherwise qualifies for an exemption under our statute, be denied

---

[3] In this regard, see the citation of cases infra.

that exemption because the beneficiaries of its charitable endeavors reside outside of this Commonwealth?

Considering, then, the first question: The Constitution of Pennsylvania, Article IX, Section 1, permits the General Assembly to grant an exemption to "actual places of religious worship" and to "institutions of purely public charity", and this the General Assembly did in the Act of May 14, 1874, P. L. 158, the relevant section of which, in substantially the same words, comes to us in this case as Section 202, Article II, of the Act of May 21, 1943, supra.

We have consistently held that organizations which have a religious purpose may qualify for an exemption as a "purely public charity", even though they are not "actual places of religious worship".

In *Episcopal Academy v. Phila. et al.*, 150 Pa. 565, 25 A. 55, where this Court allowed an exemption as a purely public charity to, what the Court said, "may be fairly considered a denominational school", the following discussion of the development of the "purely public charity" concept appears, at pps. 572, 573: "The definition of charity has been steadily broadening. It was once held to be 'whatever is given for the love of God, or for the love of your neighbor, free from any taint or stain of any consideration that is personal or selfish.' But the purity and unselfishness of the motive came to be regarded by the courts as important only in the moral aspects of the act, and was not insisted on in determining whether a gift was to a charitable use. In Donohugh's Ap., 86 Pa. 312, charity was defined as something 'done out of good will, benevolence, a desire to add to the happiness or improvement of our fellow beings.' The fact that selfish considerations induced the act done was thus left out of view, and the act alone considered. In the recent case of

Boyd v. The Fire Insurance Patrol, 120 Pa. 624, another advance was made, and the court held that a corporation acting in aid and ease of the city of Philadelphia in the preservation of life and property at fires, without gain or profit to itself, was a public charity, notwithstanding the fact that among its acknowledged objects was that of lessening the losses of fire insurance companies. In view of these cases it may be safely said that whatever is gratuitously done or given in relief of the public burdens or for the advancement of the public good is a public charity. In every such case as the public is the beneficiary, the charity is a public charity. As no private or pecuniary return is reserved to the giver or any particular person, but all the benefit resulting from the gift or act goes to the public, it is a 'purely public charity,' the word 'purely' being equivalent to the word 'wholly.' . . .".

A Young Women's Christian Association, where the object is "to improve the temporal, moral and religious welfare of young females who are obliged to earn their own support", and the equivalent organizations for young men, have generally been allowed the statutory tax exemption: *Philadelphia v. Women's Christian Ass'n.*, 125 Pa. 572, 17 A. 475; *Young Men's Christian Association of Germantown v. Philadelphia*, 323 Pa. 401, 187 A. 204; *Young Men's Christian Association of Pittsburgh Tax Case*, 383 Pa. 176, 117 A. 2d 743, affirming 4 D. & C. 2d 186. See also, *Salvation Army v. Allegheny County*, 367 Pa. 373, 80 A. 2d 758.

In *The Central Pennsylvania Bible Conference Society of the United Evangelical Church v. Union County*, 24 Dist. 392, camp meeting grounds, where "lecture and study courses are conducted for the purpose of the study of the Holy Scriptures and training persons for religious work", were held exempt from taxation as a

purely public charity. To the same effect, *Pocono Pines Assembly, and Summer Schools of Naomi Pines v. Monroe County,* 29 Pa. Superior Ct. 36, in so far as the nonprofit making part of the land was concerned.

A society which employed "missionaries to establish Sunday schools in communities where none exist, to visit families for religious conversation, and to distribute religious literature", and which published and sold religious books, was allowed an exemption from taxation as a purely public charity, except in so far as its book selling activities were commercial in character: *American Sunday School Union v. City of Philadelphia; Taylor, Receiver of Taxes; and William Laughlin et al., constituting the Board of Revision of Taxes,* 161 Pa. 307, 29 A. 26.

Perhaps the case most directly in point is *Board of Home Missions and Church Extension of the Methodist Episcopal Church v. Philadelphia,* 266 Pa. 405, 109 A. 664. The organization sought an exemption for its headquarters building in Philadelphia from which it carried on ". . . the great public work in which the board is engaged, namely, the spread of the Christian religion, for the benefit of mankind, 'throughout the United States and territories,' by establishing and extending the 'Christian influence' of one of the great and generally recognized mediums to that end—the Methodist Episcopal Church,—and, more specifically, by aiding, wherever necessary, in the purchase and erection of 'suitable houses of public worship and other church property . . . and the prosecution of the [home] mission work of the Methodist Episcopal Church.' ". We granted that exemption, saying, at p. 411: "In Donohugh's App., 86 Pa. 306, we early ruled that a purely public charity, within the meaning of Article IX, Section 1, of the Constitution, is not necessarily

one solely controlled by the State, but extends to private charitable institutions which are not administered for any individual gain; and in Fire Ins. Patrol v. Boyd, 120 Pa. 624, we held that the true test of a public charity is the character of the objects sought to be attained, saying (p. 645), to bring the hearts of an indefinite number of persons 'under the influence of education or religion,' was a proper object of public charity; finally, in White v. Smith, 189 Pa. 222, we ruled that the mere fact of a public charity being under the control of those belonging to a particular religious denomination, so long as its ultimate object was to help an indefinite number of persons, without regard to their religious beliefs, made it none the less a purely public charity. . . .".

Under the above authorities, we think it abundantly clear that an organization doing the work of the West Indies Mission, and organized as it is, would receive a tax exemption on real property owned by it and used for its charitable endeavors, if the beneficiaries of its labors were residents of this Commonwealth.

This brings us to the second question: Should we deny that exemption because the beneficiaries are not residents of Pennsylvania?

The appellees argue (and indeed the lower court and the Superior Court agree with them) that the "quid pro quo" theory, as enunciated by Mr. Justice MAXEY in the case of *Young Men's Christian Association of Germantown v. Philadelphia*, supra, at p. 413, requires an affirmative answer to that query. The quotation on which they rely is: "Taxes are not penalties but are contributions which all inhabitants are expected to make (and may be compelled to make) for the support of the manifold activities of government. Every

inhabitant and every parcel of property receives governmental protection. Such protection costs money. When any inhabitant fails to contribute his share of the costs of this protection, some other inhabitant must contribute more than his fair share of that cost. There are substantial reasons why an institution wholly devoted to public charity should be exempt from taxation, since one of the duties of the government is to provide food and shelter for the poor. Any institution which by its charitable activities relieves the government of part of this burden is conferring a pecuniary benefit upon the body politic, and in receiving exemption from taxation it is merely being given a 'quid pro quo' for its services in providing something which otherwise the government would have to provide. Just as the exemption of the property of a municipality is founded on the fact that the municipality is a governmental agency of the State, vested by the State with a part of its sovereignty, and employed in aiding the State in matters of government and the execution of its laws, so likewise the exemption from taxation of institutions of public charity is founded on the fact that such a charity is assuming a share of the public burden. The measure of an institution's gratuitous aid to those requiring it is the measure by which the government is relieved of its responsibilities. It is therefore just that an institution which assumes pro tanto the taxpayer's burden should be relieved of its own tax burden.".

In the *Germantown Y. M. C. A.* case, the Supreme Court had before it a familiar type of organization which had been carrying on its work in Germantown for years and, from all that appears, whose members were residents of Germantown or, at least, of Philadelphia. The local Board of Revision of Taxes granted

an exemption as to three-fifths of the property, but refused the exemption as to the other two-fifths because of the commercial rooming house operation carried on by the association on its property. The question before the Court, therefore, was whether the use of part of its premises as a dormitory was "so clearly 'necessary for the occupancy and enjoyment' of the part of the building devoted to plaintiff's work of charity or benevolence as to entitle it to exemption from paying taxes on that dormitory", and the Court held that it was not. The heart of the decision comes at p. 409, where the Court says: ". . . In all our decisions on this subject there can be discerned as a prerequisite to the taxation exemption of an institution claiming to be benevolent or charitable that it, or the portion of its property, in respect to which exemption is claimed, must possess an eleemosynary characteristic not possessed by institutions or property devoted to private gain or profit. What is 'given' must be more nearly gratuitous than for a price which impresses one as being proportionate to the services rendered. There must be facts which justify a finding that the 'actual use and occupation' of the premises is primarily for the designated charitable object and not largely for commercial purposes . . . The fact that all the net proceeds of a business are used for charitable purposes does not make that business a charitable institution. If any business is manifestly commercial in character, it is not relieved of that classification simply because its earnings are devoted to charity. . . .". The opinion then discusses why the Germantown Y. M. C. A. failed to meet this test with respect to its dormitory, before coming to the paragraph quoted earlier, upon which appellees rely as enunciating the "quid pro quo" theory.

A careful reading of the opinion, and, even of the paragraph relied on by appellees, makes clear that Mr.

Justice MAXEY was not therein pronouncing the sort of rule for which appellees contend in the instant appeal. The crux of that paragraph reads: ". . . There are substantial *reasons* why an institution wholly devoted to public charity should be exempt from taxation, since *one* of the duties of the government is to provide food and shelter for the poor. Any institution which by its charitable activities relieves the government of part of this burden is conferring a pecuniary benefit upon the body politic, and in receiving exemption from taxation it is merely being given a 'quid pro quo' for its services in providing something which otherwise the government would have to provide. . . .". (Emphasis supplied.) It is to be noted that there the reference is to "reasons" for an exemption to charities and an expansive illustration of one of them. There is nowhere a declaration that relief of "the government of part of this burden" is the only and determinative test of a charity for tax exemption purposes. Can it be denied that the encouragement of certain endeavors that the body politic considers beneficial or desirable is also one of the "reasons" for a tax exemption? Could we, except in the broadest terms, say that the government is being relieved from its burden when we allowed an exemption for property on which was located the offices of a Sunday School Union, or a Board of Home Missions, or real estate on which the Central Pennsylvania Bible Conference or the Pocono Pines Assembly held its religious training sessions, or even on that part of a Y. M. C. A. or a Y. W. C. A. devoted to "religious welfare"? Our traditional concept of the separation of church and state would not permit us to even consider such activities as part of the *burden* of government.

Furthermore, strict acceptance of the idea that the only measure of an institution's relief from tax burdens

would be the measure by which it relieved the government of its responsibilities, would require the taxing agencies and the courts to make an absurdly complex determination as to the effectiveness of the relief from its burdens that the charity is giving to the government, prior to determining the extent of every charitable tax exemption. We are unaware of having ever required such a determination.

There is still another compelling reason for believing that the "quid pro quo" theory as advanced by appellees has never constituted the exclusive basis for exemptions to charities from real estate taxation in this Commonwealth. The taxing authorities to which Section 202, Article II, of the Act of May 21, 1943, applies, are counties and smaller political subdivisions. If the controlling consideration is that the institution claiming charitable exemption will be exempted only to the extent that the taxing authority has an obligation to the beneficiaries of the charity's labors, then each county, school district, or township would have to limit exemptions in so far as the beneficiaries of the charity were residents of adjoining townships, counties or persons residing in other parts of the Commonwealth. Our research does not uncover a single case where we allowed an otherwise charitable exemption to be denied because the beneficiaries of the charity resided outside the taxing school district or county, or even outside this Commonwealth, for that matter.

Indeed, our courts have gone quite a way in the opposite direction. In *Barnes Foundation v. Keely et al.,* 314 Pa. 112, 171 A. 267, the Board of Revision of Taxes in Philadelphia refused to allow an exemption on a building in Philadephia which it appears was used in the administration of a charitable art school and gallery in Montgomery County. Admittedly, the charita-

ble purposes of the organization were effectuated in Montgomery County. Yet, we held that since the entire plant, taken as a whole, was devoted to the ends contemplated by the statute, the administrative portion in Philadelphia was entitled to a tax exemption. See also *The Contributors to the Pennsylvania Hospital v. The County of Delaware et al.*, 169 Pa. 305, 32 A. 456.[4]

The *Infants Welfare League Camp, Inc. Tax Assessment Case*, 169 Pa. Superior Ct. 81, 82 A. 2d 296, concerned a 200 acre tract in Wayne County, Pennsylvania, which was owned by a New York charitable institution and used as a summer camp exclusively for the benefit of under-privileged children from New York City. The opinion, at p. 82, points out that the appellant County Board of Assessment vigorously contended ". . . that, since neither the Commonwealth of Pennsylvania nor any municipal subdivisions thereof, nor children thereof, are benefited by the charity, it is not

---

[4] Two decisions of the Courts of Common Pleas are of interest in this connection:

In *Camden County Council, Boy Scouts of America v. Bucks County*, 13 D. & C. 213, a charitable exemption was granted to a council of Boy Scouts troops of Camden, New Jersey, for a camp which it owned and operated in Bucks County, Pennsylvania, for the benefit of its members.

*China Inland Mission, Inc. v. Board of Revision of Taxes*, C.C.P. of Philadelphia, No. 6, 527 March Term, 1953, involved a society whose ". . . purpose is evangelization by spreading Christian doctrine in the Far East by means of preaching, establishing churches, doing relief work, helping in schools, and the like.". President Judge Bok allowed an exemption on the part of the building in Philadelphia which was used ". . . as a home for outgoing or incoming missionaries, as a secretarial, directors', and editorial office, as a place for regular prayer meetings, and as a candidate school. . . .", stating that, "The fact that its objects of concern are the heathen abroad instead of the benighted at home is of no moment.".

entitled to the tax exemption. In other words, appellant argues that for the exemption to be granted there must be a quid pro quo to the Commonwealth, some of its municipalities or people. . . .". Judge ARNOLD, now Justice ARNOLD of this Court, in that well-reasoned opinion held that the Legislature had not made such a distinction in the statute,[5] and the tax exemption was allowed.

Counsel for appellees seeks to distinguish the *Infants Welfare League Camp* case because while there it was conceded that the institution was a charity, here, he contends, the "quid pro quo" theory is being advanced as a test for "determining whether an agency or an institution is a 'charity' and not for the purpose of determining if a charity is entitled to an exemption.". With this we cannot agree. In any number of cases, for example: *The Domestic and Foreign Missionary Society's Appeal,* 30 Pa. 425; *Frazier, Trustee v. St. Luke's Church,* 147 Pa. 256, 23 A. 442; *Presbyterian Board of Foreign Missions v. Culp,* 151 Pa. 467, 25 A. 117; *George Nauman, Wm. B. Given and Eugene G. Smith, Trustees v. John S. Weidman,* 182 Pa. 263, 37

---

[5] See particularly at p. 84, where, in answering the contention that the statute should be interpreted as refusing an exemption where the beneficiaries of the charity are not residents of Pennsylvania, the opinion states, ". . . It *may* have been the intention of the Legislature to reserve for the benefit of the Commonwealth, its municipal subdivisions, or its residents, the exemption from taxes provided by the Act of 1943, supra. It certainly has not done so, nor has any such distinction been made in any of the antecedent Acts.[1] Since the tax exemption statute is free from all ambiguity, we may not speculate on the *possible* intention of the Legislature." Footnote 1 referred to in this quotation reads, "[1]Act of 1874, P. L. 158, as amended by the Acts of 1901, P. L. 319, 1909, P. L. 54, and 1911, P. L. 898; and Act of 1919, P. L. 1021, as amended by the Acts of 1921, P. L. 119, 1925, P. L. 39, 1925, P. L. 388", citing the various reenactments of the statute.

A. 863, we have recognized foreign missionary societies as being valid charities for testamentary purposes. In various other situations courts are required to determine whether an institution is a charity for some other specific legal or statutory purpose. In the *Infants Welfare League Camp* case the Court was determining whether the camp was the sort of charity which came within the statute and was thereby entitled to an exemption. And in the instant case, we are not trying to determine whether the West Indies Mission is a "charity" in some purely conceptual sense or for some abstract purpose. We are directly concerned with the specific legal question of whether the Mission is an entity that comes within the statutory tax exemption granted to "all . . . institutions of learning, benevolence or charity" by the Act of May 21, 1943.

A case very like the one before us arose in the House of Lords in *The Commissioners for Special Purposes of the Income Tax v. John Frederick Pemsel*, 1891, A. C. [Eng.] 531; 55 J. P. 805, 61 J.Q.B.N.S. 265; 65 L.T.N.S. 621-H.L. A substantial amount of real estate was left in trust, one-half of the rents and profits of which was to be devoted to "maintaining, supporting and advancing the missionary establishments among heathen nations of the Protestant Episcopal Church". The English income tax law exempted ". . . rents and profits of lands . . . belonging to any hospital, public school, or almshouse, or vested in trustees for charitable purposes, so far as the same are applied to charitable purposes.". The Income Tax Commissioners refused to allow the exemption, and suit and the appeal followed. The House of Lords held that these profits were devoted to a charitable purpose, and that the exemption should be allowed.

Our sister state, New Jersey, has had occasion to consider charitable exemption to missionary societies

in at least two reported cases. In *Ferdinand Litz et al. v. Joseph W. Johnston, Collector of Eatontown Township,* 65 N.J.L. 169, 46 A. 776, an exemption was sought for realty in New Jersey by a religious order with headquarters in Rome and incorporated in New York. The New Jersey Court allowed the exemption in the following terms, at p. 170: "Whether we regard the free education of the young, or the conducting of religious services, or the furnishing of spiritual aid and material assistance to a missionary priesthood, all the objects to which this order has devoted this land are exclusively charitable in the sense in which our taxing law had been applied.".

Again in *State (Congregation of Mission of St. Vincent De Paul in Bordentown) v. Brakeley,* 67 N. J. L. 176, 50 A. 589, a similar exemption was granted to a missionary organization incorporated in Pennsylvania on land in New Jersey which was used by the missionaries as a seminary and for recuperative purposes.

In this Commonwealth, in the case of *Sunday School Union v. City of Philadelphia,* supra, and in *Board of Home Missions v. Philadelphia,* supra, where it clearly appeared that a large part of the work of the charity was done outside of this Commonwealth, this was not made the basis for a distinction in the tax exemption that was granted under our statute. Charity begins at home but it does not end there. Benevolence knows no geographical boundary and the Legislature of Pennsylvania has imposed none.

Considering all the authorities herein cited, we hold that the court below erred in denying an exemption to the West Indies Mission because the beneficiaries of its charitable endeavors were resident outside of this Commonwealth.

The court below having decided that the West Indies Mission was not a purely public charity within the

meaning of the Act of 1943, and that it was entitled to no exemption whatsoever, did not, therefore, concern itself with the question of how much of the property of this charity is devoted to charitable uses and is thereby entitled to be exempted from real estate taxation. That involved question was not, therefore, argued before us at any length, nor did the record come to us with sufficient detail for us to make a final determination as to what portion of the property is devoted to charitable use. Thus we must return this case to the court below for the taking of such additional testimony as it may deem necessary to make further findings concerning the use to which the West Indies Mission's real estate is put, and to determine what portion is devoted to charitable uses and consequently entitled to an exemption from real estate taxes. In this connection, see generally, *Philadelphia v. Barber,* 160 Pa. 123, 128, 28 A. 644; *American Sunday School Union v. City of Philadelphia; Taylor, Receiver of Taxes; and William Laughlin et al., constituting the Board of Revision of Taxes,* 161 Pa. 307, 313, 29 A. 26; *Young Men's Christian Association of Germantown v. Philadelphia,* 323 Pa. 401, 409, 187 A. 204; *Hill School Tax Exemption Case,* 370 Pa. 21, 27, 87 A. 2d 259; *West View Borough Municipal Authority Appeal,* 381 Pa. 416, 420, 113 A. 2d 307; *Sisters of the Blessed Sacrament,* 38 Pa. Superior Ct. 640; *Parmentier et al., Trustees', Appeal,* 139 Pa. Superior Ct. 27, 11 A. 2d 690, and cases cited therein at p. 32 et seq.

The judgment of the Superior Court is reversed, and the record is remanded to the court below for further findings and adjudication consonant with this opinion.