Pittsburgh Bible Institute *v.* Board of Property Assessment, Appeals and Review, Appellant.

Argued October 2, 1961. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

*Philip Baskin,* Special Counsel, with him *Frank J. Zappala, Jr.,* Assistant County Solicitor, and *Maurice Louik,* County Solicitor, for Board of Property Assessment, Appeals and Review, appellant.

*H. Stewart Dunn,* with him *Bechman, Dunn & McGregor,* for appellee.

OPINION BY MR. JUSTICE EAGEN, November 14, 1961:
This is an appeal from a decision and order of the Court of Common Pleas of Allegheny County which ruled that the property of the Pittsburgh Bible Institute is totally exempt from real estate assessment and taxation. A tax assessment levied against a portion

of the property for the years 1959, 1960 and 1961 by the Board of Property Assessment, Appeals and Review, was declared by the court to be invalid.

The Pittsburgh Bible Institute is an unincorporated nonprofit association. Its object is "[T]o give an opportunity to all who may desire to gain a thorough and practical knowledge of the Word of God and of methods of Christian work; to train those who desire to enter the Ministry; to prepare Missionaries for City, Home, or Foreign Fields; to instruct Bible Teachers and Christian Workers; to enable theological students to devote themselves for a season exclusively to the study of the Bible and to the winning of souls; further, to prepare students to read both the Old and New Testaments in the original languages, and to train in prayer and for all forms of Christian activity."

More than 1500 students have been enrolled in the Institute since its founding. In the years 1958, 1959 and 1960, a total of 12, 8, and 9 students, respectively, enjoyed the facilities provided.

The Institute began to acquire its present property in the year 1912. It consists of approximately 420 acres, including 175 acres of cultivated farm land, and 120 acres of timberland. All of the farm work is performed by students of the Institute and its personnel. The farm products are used principally to provide maintenance for students and others associated in the work of the Institute. A portion is used to supplement the maintenance of the Buelah Home, Bellevue, Pennsylvania, a residence for returned missionaries. Buildings, including men's and women's dormitories, an administration building and a chapel are erected on a portion of the land and consume the use of approximately 10 acres. Construction of other facilities is contemplated in the future.

Besides the primary purpose of training missionaries, a Bible conference is conducted annually during

the month of August, attended by over 1000 people weekly. Meeting and dining facilities are provided for the visitors. Furthermore, over 300 orphans have been provided for since the founding of the Institute. In the year 1959, 11 orphans were housed and cared for, but this work has been, at least temporarily, discontinued.

The Institute depends entirely for its financial support upon freewill offerings and an annual contribution from a deceased benefactor's estate.

The Constitution of Pennsylvania, Art. IX, §1, provides, inter alia, that the General Assembly may by general laws exempt from taxation "actual places of religious worship, . . . institutions of public charity . . . ."

The Act of May 22, 1933, P. L. 853, §204, as amended, 72 PS §5020-204 (Supp.), provides as follows: "The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit: (a) All churches, meeting-houses, or other regular places of stated worship, with the ground thereto annexed necessary for the occupancy and enjoyment of the same; . . . (c) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity, including fire and rescue stations, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose; . . . (i) All real property owned by one or more institutions of purely public charity, used and occupied partly by such owner or owners and partly by other institutions of purely public charity, and necessary for the occupancy and enjoyment of such institutions so using it; . . ."

The court below found that the Institute is a religious, charitable and educational organization; that all of the land and buildings thereon are used to carry out these purposes and, therefore, not subject to taxation. The Board of Property Assessment takes the position that the land acreage used for farming and timberland is not necessary to carry out the purposes of the organization's work and should be taxable.

We agree with the court below as to the nature and scope of the work of the Institute.[1] As pointed out by this Court in *Hill School Tax Exemption Case,* 370 Pa. 21, 24, 87 A. 2d 259 (1952), it is not easy to define a charitable use. Therein the following definition was approved: " 'A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government.' "Again at page 25, the Court said: " ' "The word 'charitable', in a legal sense, includes every gift for a general public use, to be applied, consistent with existing laws, for the benefit of an indefinite number of persons, and designed to benefit them from an educational, religious, moral, physical or social standpoint. In its broadest meaning it is understood 'to refer to something done or given for the benefit of our fellows or the public.' ": Taylor v. Hoag, 273 Pa. 194, 196, 116 A. 826. ' "Charitable uses may be unlimited in number and are not to be determined by the application of any narrow criterion. Whether a purpose is charitable must be ascer-

---

[1] The appellant filed no exception to the court's finding of fact in this respect.

tained from a consideration of all surrounding circumstances. A design to achieve objects beneficial to the community is common to all charitable purposes. . . . The concept of a charity is continually broadening.".': Tollinger Estate, 349 Pa. 393, 397, 37 A. 2d 500, 502. ' "A purpose is charitable if its accomplishment is of such social interest to the community as to justify permitting the property to be devoted to the purpose in perpetuity. There is no fixed standard to determine what purposes are of such social interest to the community; the interests of the community vary with time and place. . . . As to what other purposes are of such interest to the community as to be charitable, no definite rule can be laid down." ': Restatement, Trusts, §368, comment b." ' " Also on page 26, the Court said: "The word 'purely' as used in the Constitution in the phrase 'purely public charity' means that the institution must be entirely free from private profit motive. In The Burd Orphan Asylum v. The School District, supra, we said, p. 35: ' ". . . when the charity is public, the exclusion of all idea of private gain or profit is equivalent in effect to the force of 'purely,' as applied to public charity in the constitution." ' " See also, *West Indies Mission Appeal*, 387 Pa. 534, 128 A. 2d 773 (1957) and *Salvation Army v. Allegheny County*, 367 Pa. 373, 80 A. 2d 758 (1951).

Since the Institute is charitable in use, the exemption to which it is entitled is more broad than that of institutions which are purely religious in nature. See *First Baptist Church of Pittsburgh v. Pittsburgh*, 341 Pa. 568, 20 A. 2d 209 (1941); *Wynnefield Presbyterian Church v. City of Philadelphia*, 348 Pa. 252, 35 A. 2d 276 (1944) and *Second Church of Christ Scientist of Phila. v. Phila.*, 398 Pa. 65, 157 A. 2d 54 (1959).

However, we do not agree with the court below that all of the property involved is free and exempt from taxation. Even in the case of charitable institutions

only that land which is an integral part of its charitable purpose is exempt. Property which is in excess of the reasonable needs to effectuate the charitable purpose is taxable. See, *Sisters of the Blessed Sacrament,* 38 Pa. Superior Ct. 640 (1909) and *Foerderer v. City of Phila.,* 111 Pa. Superior Ct. 328, 170 Atl. 708 (1934).

While that portion of the land used for farming purposes may be considered reasonably necessary, under the circumstances presented, to accomplish the purposes of the Institute, this is definitely not so with regard to the timberland. This land, approximately 120 acres in extent, is clearly not in this classification and is, therefore, taxable.

Order, as modified, is affirmed. Each side to pay own costs.