## Bower Hill Civic League Appeal.

Argued November 12, 1965.   Before WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (ERVIN, P. J., and FLOOD, J., absent).

*Thomas M. Rutter, Jr.,* Assistant County Solicitor, with him *Francis A. Barry,* First Assistant County Solicitor, and *Maurice Louik,* County Solicitor, for appellant.

*Louis D. Cooper,* for appellee.

OPINION BY MONTGOMERY, J., December 16, 1965:

The Board of Property Assessment, Appeals and Review (Board) denied the appellee, Bower Hill Civic League (League), tax exempt status for its real estate consisting of a parcel of land with a community building thereon, in Scott Township, Allegheny County, Pennsylvania, for the year 1961 and thereafter. On appeal by the League to the County Court of said County, the order of the Board was reversed and the property held to be exempt from taxation. This appeal by the Board followed.

The League is a nonprofit corporation organized and existing under the laws of Pennsylvania for the purpose of "The coordinating of the various civic groups in the community, for the purpose of advancing civic, cultural and recreational life and activities of the community . . ."

The important facts are not in serious dispute, and may be succinctly stated as follows. There are about 260 family members of the League who are residents in and near the Bower Hill section of Scott Township; the structure which is being assessed was built for a community building from public subscription, a donation from a foundation, and the proceeds of a mort-

gage. It has kitchen facilities, two meeting rooms, a small service area, and rest rooms. The building was used by the following groups after its completion on or about October 2, 1961 (The figures represent the number of times each organization used the facilities):

| GROUP | 1961 | 1962 | 1963 | 1964 | 1965 (Until June) |
|---|---|---|---|---|---|
| Women's Club | 27 | 46 | 28 | 26 | 23 |
| Boy Scouts | 9 | 32 | 28 | 15 | 11 |
| Teenagers | 8 | 5 | 4 | 5 | |
| Civic League | 7 | 20 | 24 | 23 | 7 |
| Red Cross Unit | 1 | | | | |
| Flu Clinics | 2 | 3 | 2 | 2 | |
| Baseball Ass'n | 2 | 2 | 6 | 10 | 11 |
| O.R.T. | 2 | | | | |
| Art Show | | 52 | 12 | | |
| Graduation Parties | | 3 | 6 | 7 | 1 |
| Eastern Star | | 12 | 12 | 18 | 8 |
| Church Square Dance | | 10 | | | |
| Rainbow Girls | | | 2 | | |
| Police Brotherhood | | | 1 | 1 | 1 |
| Young Republicans | | | 2 | 1 | |
| Bloodmobile | | | | 1 | |
| B'nai Brith | | | | 1 | |
| Eem. Club | | | | 1 | |
| V.M.I. Alumna | | | | 1 | |
| Totals | 58 | 185 | 127 | 112 | 62 |

A rental is collected from those organizations able to pay for the use of the facilities, and annual dues of five dollars per family are collected from members. For the fiscal year ending June 30, 1963, the total receipts were $5,544.97, itemized as follows: $1,092.15 dues, $115 gifts ($100 of which was from South Hills Women's Club), $27.81 interest, $1,296 rentals, $361.45 social affairs, $2,257.17 from a flu shot clinic, $395.39

contributions to and for advertising in a newspaper it publishes and circulates (2,200 copies) monthly in Scott Township which is devoted to civic affairs and community matters. Its expenses for the same year were as follows: interest on mortgage $1,436.75, operating expenses $562.71, light, heat and water $744.12, building maintenance $1,023.83, set aside for real estate tax $949.93, or a total of $4,717.34, leaving a surplus of $827.63 for transfer to the building fund applicable to payment on the mortgage, unless the property is exempt from taxes, in which case the surplus will be $1,777.56.

Charges of rentals are made generally for the use of the building by private individuals or groups for weddings, meetings, graduations, teaching dancing, etc., but no nonprofit organization or other group conducting a community activity is required to pay a rental.

The authority for claiming tax exemption is the Constitution of Pennsylvania, Article IX, Section 1, which provides that the General Assembly may by general laws exempt from taxation institutions of purely public charity and, the Act of May 22, 1933, P. L. 853, §204, as amended, 72 P.S. §5020-204, which provides as follows: "The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit: . . . (c) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity, including fire and rescue stations, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purposes; . . . (i) All real property owned by one or more institutions of

purely public charity, used and occupied partly by such owner or owners and partly by other institutions of purely public charity, and necessary for the occupancy and enjoyment of such institutions so using it . . . ."

Liability of all real estate to taxation is the rule and exemption from taxation the exception. *Dougherty v. City of Philadelphia,* 112 Pa. Superior Ct. 570, 172 A. 177 (1934) ; and the burden is on the one claiming exemption to establish his right, *Wynnefield United Presbyterian Church v. City of Philadelphia,* 348 Pa. 252, 35 A. 2d 276 (1944) ; *Commonwealth of Pennsylvania, State Employes' Retirement System v. Dauphin County,* 335 Pa. 177, 6 A. 2d 870 (1939) ; also, statutes which exempt real estate from taxation must be construed strictly against the claimed exemption, *McGuire v. Pittsburgh School District,* 359 Pa. 602, 60 A. 2d 44 (1948) ; and statutory provisions exempting property from taxation may not be extended by implication, *Commonwealth v. Union Collieries Co.,* 372 Pa. 452, 93 A. 2d 460 (1953). These principles have recently been reaffirmed in *University of Pittsburgh Tax Exemption Case,* 407 Pa. 416, 180 A. 2d 760 (1962).

It is the principal contention of the appellant that the League is not "a purely public charity" as contemplated by the Constitution of Pennsylvania and the statute previously set forth.

Our courts have attempted many times to determine the intendment of the Constitution by the use of the phrase "a purely public charity" as it may be currently understood and our appellate courts have written long dissertations on the subject, particular reference being made to *West Indies Mission Appeal,* 387 Pa. 534, 128 A. 2d 773 (1957) ; *Hill School Tax Exemption Case,* 370 Pa. 21, 87 A. 2d 259 (1952) ; *Ogontz School Tax Exemption Case,* 361 Pa. 284, 65 A. 2d 150 (1949) ; *Woods Schools Appeal,* 195 Pa. Superior Ct. 531, 171 A. 2d 897 (1961), affirmed in 406 Pa. 579, 178 A. 2d 600

(1962), the principles of which have been to some extent summarized in *Pittsburgh Bible Institute v. Board of Property Assessment, Appeals and Review,* 405 Pa. 297, 175 A. 2d 82 (1961).

Rather than refer to each case previously noted we deem it advantageous to repeat the summary in the *Bible Institute* case as an aid in reaching a conclusion in the present case: 405 Pa. 297 at 301, 175 A. 2d 82 at 84.

"As pointed out by this Court in Hill School Tax Exemption Case, 370 Pa. 21, 24, 87 A. 2d 259 (1952), it is not easy to define a charitable use. Therein the following definition was approved: ' "A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government." ' Again at page 25, the Court said: ' " "The word "charitable", in a legal sense, includes every gift for a general public use, to be applied, consistent with existing laws, for the benefit of an indefinite number of persons, and designed to benefit them from an educational, religious, moral, physical or social standpoint. In its broadest meaning it is understood "to refer to something done or given for the benefit of our fellows or the public." ' ": Taylor v. Hoag, 273 Pa. 194, 196, 116 A. 826. " 'Charitable uses may be unlimited in number and are not to be determined by the application of any narrow criterion. Whether a purpose is charitable must be ascertained from a consideration of all surrounding circumstances. A design to achieve objects beneficial to the community is common to all charitable purposes . . . . The concept of a charity

is continually broadening.' ": Tollinger Estate, 349 Pa. 393, 397, 37 A. 2d 500, 502. " 'A purpose is charitable if its accomplishment is of such social interest to the community as to justify permitting the property to be devoted to the purpose in perpetuity. There is no fixed standard to determine what purposes are of such social interest to the community; the interests of the community vary with time and place . . . . As to what other purposes are of such interest to the community as to be charitable, no definite rule can be laid down.' ": Restatement, Trusts, §368, comment b.' " ' Also on page 26, the Court said: 'The word "purely" as used in the Constitution in the phrase "purely public charity" means that the institution must be entirely free from private profit motive. In The Burd Orphan Asylum v. The School District, supra, we said p. 35: " '. . . when the charity is public, the exclusion of all idea of private gain or profit is equivalent in effect to the force of "purely," as applied to public charity in the constitution.' " ' See also, West Indies Mission Appeal, 387 Pa. 534, 128 A. 2d 773 (1957) and Salvation Army v. Allegheny County, 367 Pa. 373, 80 A. 2d 758 (1951)."

In addition to the principles just recited we must also keep in mind the admonition found in *Young Men's Christian Association of Germantown v. Philadelphia,* 323 Pa. 401, 411, 187 A. 204, 209 (1936), and repeated in the *Ogontz School Tax Exemption Case,* supra: " 'A judicial desire to be liberal toward institutions which are doing praiseworthy public work has sometimes led the courts to invest the word "charity," as used in the above excerpt from the Constitution, with a meaning not warranted either lexicologically or by a consideration of the ideology of the constitution provision invoked.' "

At the outset it must be conceded that the League is a nonprofit organization and that no individual connected with it benefits financially from its operations,

except its employe the janitor, who maintains the building and grounds. Any excess of rentals plus contributions over and above expenses is utilized solely for the liquidation of its mortgage indebtedness. It is not the fact that there may be such an excess that determines the profit motive in these cases but it is whether such organizations are engaged in a commercial venture in competition with others engaged in similar businesses. *Young Men's Christian Association of Germantown v. Philadelphia,* supra.

In this connection we must also realize that these facilities are being used mainly by organizations and individuals who could not qualify as persons or organizations in need of charity or general public help, i.e., the Women's Club, teenagers, fraternal, sorority, college, and political groups.

We must also give attention to the purpose of the appellee as expressed in its charter. It was founded not as a benevolent or eleemosynary organization but as one to coordinate the various civic groups in the community; and it is not bestowing any charitable bequests upon anyone except to the extent that it permits nonprofit organizations to share its quarters without charge, at the same time demanding from others able to pay a rental sufficient to more than defray its expenses.

We have no doubt that the facilities under consideration are newer and possibly more desirable than available facilities in established churches, schools, and other public buildings, which civic and other nonprofit groups similar to those previously enumerated ordinarily find available for their meetings; and we must admit also that regardless of the fact the needy have facilities, whether they be meeting places or homes, improvement in their conditions may justify tax exemption. *Young Men's Christian Association of Pittsburgh Tax Case,* 383 Pa. 176, 117 A. 2d 743 (1955) ; *Salva-*

*tion Army v. Allegheny County*, 367 Pa. 373, 80 A. 2d 758 (1951). However, how far the definition of charity may be extended is the question still to be answered.

Although as previously expressed by our Supreme Court in *Pittsburgh Bible Institute v. Board of Property Assessment, Appeals and Review*, supra, a design to achieve objects beneficial to the community is common to all charitable purposes, it does not follow that all such designs are charitable or "purely public charity".

Another factor to be considered is that of public or private charitable support in the maintenance of appellee's facilities. Although initially there was a public subscription to aid in the erection of appellee's building, since then the operation has been dependent on its income from the use of its facilities. Of the $5,544.97 income for the fiscal year ending June 30, 1963, only $115 of that amount represented gifts, out of which amount $100 was a gift from the Women's Club which used the facilities extensively during that period.

Furthermore there is nothing in the charter indicating that appellee corporation is of a public nature nor does it appear that the property has been dedicated in an unqualified manner to public use as to bring it within one of the definitions of charity aforementioned, except possibly the charitable use described as "by erecting or maintaining public buildings or works." However, this is not a public building regardless of how much opportunity the community or general public has of renting or otherwise using it. The general public has no control over its operation, nor do public authorities have a right of visitation, which are essential elements in such determinations. *Commonwealth v. The Barnes Foundation*, 398 Pa. 458, 159 A. 2d 500 (1960); *Delaware County Institute of Science v. Delaware County*, 94 Pa. 163 (1880); *Hawk Mountain Sanctuary Assn. v. Berks County Board for the Assess-*

*ment and Revision of Taxes,* 188 Pa. Superior Ct. 54, 145 A. 2d 723 (1958).

Considering all of the surrounding circumstances we are led to the inevitable conclusion that the purpose of appellee corporation is not of such social interest to the community as to justify permitting the property to be devoted to that purpose in perpetuity. There are many civic,[1] social, service and fraternal nonprofit groups that devote much of their time, efforts and money in bestowing charitable assistance to others. However, such projects do not make such organizations "purely [wholly] public charities" as to entitle them to exemption from local real estate taxes. It is in such a category that we place appellee. It is performing a laudable public service but it is not a "purely public charity".

The order of the lower court placing appellee's property in an exempt status is reversed and the assessment of same made by the appellant Board is reinstated.

---

[1] In *United States v. Pickwick Electric Corporation,* 158 F. 2d 272, 276 (6th Cir. 1946), it is stated, "A civic league or organization embodies the idea of citizens of a community cooperating to promote the common good and general welfare of people of the community." We do not say that a civic organization cannot also be a charitable one but in the present case we do say that the operations of appellee League are more of a civic nature than charitable. See also *Erie Endowment v. United States,* 316 F. 2d 151 (3d Cir. 1963), for a further discussion of the nature of such organizations.