534 A.2d 568

Order of Franciscan Fathers of Green Bay, Wisconsin *v.* Board of Property Assessment, Appeals and Review, Borough of Ben Avon, Avonworth School District and The County of Allegheny. The Borough of Ben Avon, Appellant.

Argued October 6, 1987, before Judges CRAIG and DOYLE, and Senior Judge KALISH, sitting as a panel of three.

*John F. Meck*, with him, *Robert Stoddart, Houston, Houston & Donnelly*, for appellant, Borough of Ben Avon.

*Ralph H. German*, with him, *Paul David Burke, Cooper, German, Kelly & Purcell, P.C.*, for appellee.

OPINION BY JUDGE CRAIG, December 8, 1987:

The Borough of Ben Avon, Avonworth School District, Allegheny County and the county's Board of Prop-

erty Assessment, Appeals and Review, appeal an order by Senior Judge SCHEIB of the Court of Common Pleas of Allegheny County directing the board to restore the tax-exempt status to property in the Borough of Ben Avon owned by the Order of Franciscan Fathers of Green Bay, Wisconsin. The property had been classified tax-exempt as an institution of purely public charity from 1936 to 1984. The borough successfully challenged the real estate exemption before the board. On appeal by the Fathers, the trial court concluded that the property was a tax-exempt missionary headquarters.

The questions presented in this appeal are (1) whether the work conducted by the religious in the house is the type of missionary activity which qualifies as a charity, and (2) whether the Ben Avon friary is therefore entitled to a property tax exemption as a purely public charity.

The sole witness before the trial court, Father Jerome Staniszewski, O.F.M., testified that he was the Superior of the Ben Avon Friary and was the Director of Missionaries for all of the United States and Canada. As Mission Director, Father Jerome supervises the work of about fifteen missionaries. At the time of the hearing, eight priests and one brother lived at the friary. Some of the priests were involved in local ministries, while others preached missions outside of Pittsburgh. When not traveling, the fathers in the house conducted devotional services in the friary's chapels, and engaged in continuing education and study to prepare for their missions. The Fathers also provided counseling services to lay people who came to the friary.

Father Jerome described his position as Director of Missionaries by saying that he kept in close touch with missionaries on the road, and that he himself often travelled to conduct mission work. The missions themselves are "preaching missions"; announced to the community

in advance, such a mission consists of inspirational preaching, counseling, the administration of sacraments, and home visits. A mission is aimed both toward members of the local parish and towards persons who have not professed any faith. The missions are the Fathers' only work; they do not engage in other charitable activities such as nursing care, education or social services.

The question of entitlement to an exemption is a mixed one of law and fact, and in the absence of an abuse of discretion or lack of supporting evidence, the decision of a trial judge is binding on this court. *Lutheran Social Services v. Adams County Board of Assessment and Revision of Taxes,* 26 Pa. Commonwealth Ct. 580, 364 A.2d 982 (1976).

The board argues that the trial court erred in granting the tax exemption because the supporting evidence failed to establish that the friary was used primarily as a missionary headquarters, and the mission work of the Fathers is not the sort of missionary labor which has moved the Pennsylvania Supreme Court to grant missionary headquarters exemption from property taxes.

Article 8, section 2(a)(v) of the Pennsylvania Constitution provides:

(a)   The General Assembly may by law exempt from taxation:

. . . .

(v)   Institutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution.

Section 204(a)(3) of the General County Assessment Law of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §5020-204(a)(3) is the controlling statute implementing this power:

(a) The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:

. . . .

(3) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity, including fire and rescue stations, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose.

The Fathers correctly note that Pennsylvania courts have long recognized that missionary headquarters may qualify for tax exemption as a purely public charity. These cases were discussed in *Laymen's Weekend Retreat League*, 21 Pa. Commonwealth Ct. 175, 179, 343 A.2d 714, 717 (1975):

In the West Indies Mission case, the property entitled to the charitable exemption was being used as a training ground for missionaries who were sent to the West Indies to provide medical services, broadcast religious radio programs and perform other missionary work. The property also served as headquarters for the organization and housed the missionaries and their families from time to time. In Pittsburgh Bible Institute v. Board of Property Assessment, Appeals and Review, 405 Pa. 297, 175 A.2d 82 (1961), the exempted property included an administration building as well as a chapel and dormitories used by the Institute in its endeavor to impart religious instruction which included preparation

for missionaries, Bible teachers, and Christian workers plus a study of the Bible itself and training in various forms of prayer. In Board of Home Missions and Church Extension of the Methodist Episcopal Church v. Philadelphia, 266 Pa. 405, 109 A. 664 (1920), the exempted property was an office to which were sent contributions which in turn were dispersed throughout America for the support of missionaries. It has been held that 'to bring the hearts of an indefinite number of persons "under the influence of education or religion," was a proper object of public charity.' Board of Home Missions, *supra,* 266 Pa. at 411, 109 A. at 665.

The board contends that the Fathers' mission work is not the sort of missionary labor which qualifies as a purely public charity, arguing that the Supreme Court illustrated what type of missionary activity qualified for tax-exemption in the *West Indies Case.* In *West Indies Mission Appeal,* 387 Pa. 534, 128 A.2d 773 (1957), the Supreme Court noted that the missionary headquarters was used to train and assign missionaries who provided medical services, broadcast religious programs and engaged in other "functions associated with missionary work." In contrast, the board claims that here the Fathers are priests who conduct services in many parishes and who use the friary merely as a central rectory. Without accompanying social outreach work, such as providing medical care, administering educational programs or aiding the needy, the board argues that the Fathers are simply clergymen who conduct religious services, not missionaries who function as a purely public charity.

The board's reading of the *West Indies Case* is too narrow; the Supreme Court did note the non-religious activities undertaken by the missionaries, but did not make such work mandatory to establish qualification as

a purely public charity. Our review of the cases does not indicate that missionaries must provide any specified charitable or social services to qualify as a public charity. In *Pittsburgh Bible Institute v. Board of Property Assessment, Appeals and Review, Allegheny County*, 405 Pa. 297, 301, 175 A.2d 82, 84 (1961), the Supreme Court restated the definition of a charitable use:

> A charity, in the legal sense, may be more fully defined as a gift to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government.

In the *Board of Home Missions*, 266 Pa. at 411, 109 A. at 665, the Supreme Court also held that "to bring the hearts of an indefinite number of persons under the influence of education or religion" was a proper object of public charity. *See also Hill School Tax Exemption Case*, 370 Pa. 21, 87 A.2d 259 (1952).

The cases establish that an organization designed to benefit an indefinite number of people from a religious standpoint may be considered a purely public charity, without any concomitant requirement that the organization also perform non-religious charitable work. Following this analysis, we find that the Fathers' missionary work qualifies as a purely public charity, whose aim is to bring religious benefits to an indefinite number of persons.

The board's second argument is that the friary does not qualify for a tax exemption because the evidence presented to the trial court did not establish that the friary is primarily used as a missionary headquarters.

Even though Father Jerome uses the friary as a "primary location for the administration of (missionary) work", the board contends that the eight other residents use the friary primarily as a rectory or manse. The board also contends that the Fathers cannot claim a total exemption because they failed to show what portion of their property furthers tax-exempt activities.

Residences and rectories are not institutions of purely public charity. *Mullen v. McKinney,* 138 Pa. 69, 20 A. 940 (1890). However, earlier cases have held that the provision of living quarters is not inconsistent with a purely public charity. *Parmentier et al. Trustee's Appeal,* 139 Pa. Superior Ct. 27, 11 A.2d 690 (1940); *In Re: McShea Assessment,* 22 D. & C. 3d 309 (1982). We do not believe that the trial court abused its discretion by holding that the principal use of the subject property was for missionary purposes. Unlike a manse or rectory, which are used primarily as residences, the testimony at the hearing indicated that the Ben Avon friary is used as both an administrative center and living quarters for the mission. Father Jerome testified that he reported to his superiors and directed his subordinates from the mission, and that the fathers, when not travelling, used the friary for worship services, study and preparation for mission work. Our review shows sufficient evidence on the record to support the trial court's holding.

In summary, we conclude that the missionary work conducted by the Fathers constitutes a purely public charity under existing case law, and that the Ben Avon friary is used primarily to advance that work. The sound order of Senior Judge SCHEIB is therefore affirmed.

ORDER

NOW, December 8, 1987, the order of the Court of Common Pleas of Allegheny County, No. 85-14383, dated November 14, 1986, is affirmed.