In Re: Determination of Board for the Assessment and Revision of Taxes Exempting from Real Estate Taxation for the Year 1968 Property of East Pennsylvania Conference of Seventh Day Adventists, Inc., Located in Tilden Township, Berks County.

Argued May 7, 1971, before Judges KRAMER, WILKINSON, JR., and MENCER, sitting as a panel of three.

*D. Frederick Muth,* with him *Rhoda, Stoudt & Bradley,* for appellant.

*Clifford B. LePage, Jr.,* with him *Terrence E. Connor,* and *Austin, Speicher, Boland, Connor & Giorgi,* for appellee.

OPINION BY JUDGE WILKINSON, June 8, 1971:

The Hamburg Area School District has appealed from a decision of the Court of Common Pleas of Berks County, sustaining in part and dismissing in part the School District's appeal from a decision of the Board for the assessment and revision of taxes which, with some exceptions, had determined that the property of appellee, East Pennsylvania Conference Association of Seventh Day Adventists, Inc., was entitled to be exempt from taxation. We sustain the court below.

In 1953, appellee purchased what was known as the Blue Mountain Springs Dairy. On this substantial dairy farm, with two additional purchases made later, the appellee established the Blue Mountain Academy. The record shows that this stemmed from action taken in 1948 at the Conference Campground in Wescosville, Pennsylvania, when the constituency of the East Pennsylvania Conference of Seventh Day Adventists authorized the construction of an academy and pledged to support it. From the ground breaking in 1954 until

June of 1969, a short 15 years, the very remarkable effort of this religious group had developed a private "high school" with a net worth of $2,209,064.67. In all, 429 students, boys and girls, were enrolled, with 412 living in dormitories. The total tuition and fees produced $367,274.41 of a total gross income of $797,683.04. Total operating expenses were $827,412.49. This $29,729.45 deficit was made up by a subsidy of $24,999.96 and a special donation of $8,879.08 for a net position of $4,149.59. A reading of this record clearly supports the proposition that such sound operation of a charitable high school could only be the result of hard work by dedicated people interested in the improvement of youth for the betterment of mankind. For example, in this 15-year period, the Conference has donated $299,806.09 toward the cost of operation, and the faculty and staff annual salaries range between $4,400 and $5,500.

As the court below quite properly observed, the record does not present as clear a picture of the detailed operations as might be desirable. Nevertheless, there is more than sufficient evidence to support the court's decision. Indeed, our study of the cases would seem to support a more complete exemption than here granted, especially if some points in the record were amplified. For example, operation of the dairy farm with student help as part of the educational program with all "profits" placed back in the system does not put the dairy farm into the category of a department store or spaghetti factory, operated completely independently of the school.

Appellant relies chiefly on what it refers to as the leading cases to deny the exemption: *In re: Ogontz School*, 361 Pa. 284, 65 A. 2d 150 (1949), and *Appeal of the Woods Schools*, 406 Pa. 579, 178 A. 2d 600 (1962). These are leading cases for the proposition that when a school is founded and established as a private busi-

ness venture, it cannot change its nature to a public charity by merely transferring its assets to a non-profit corporation. Indeed, the Woods Schools were started by its founder as a business venture with $175 in 1915, and she built it into assets worth approximately $500,000 by 1949. She transferred it to the non-profit corporation in consideration of the payment of $168,599.66 due her, the assumption of $64,401.71 in obligations, and a life income of $15,000 annually, plus a house furnished and maintained, food, etc. In spite of this "burden", during the period of 1954-1958, when it paid $13,500 in real estate taxes, the school showed a net position of $468,478 before depreciation and $163,-283 after depreciation. Salaries of the staff and faculty were the same as those at other institutions. Even with these facts and its history of inception as a private business venture, the Supreme Court was divided as to its being entitled to exemption.

Justice JONES of our Supreme Court recently carefully reviewed the law in this field in *Appeal of Pittsburgh Institute of Aeronautics,* 435 Pa. 618, 258 A. 2d 850 (1969). After reviewing the development of the law, Justice JONES pointed out that the important factor to be considered is whether the "profit motive" was present for personal gain. In that case, although the corporation was a nonprofit one, in addition to paying salaries to the three administrators of the school, each received "bonuses" of $46,000!

Article 8, Section 2(a)(v) of the Pennsylvania Constitution, provides: "(a) The General Assembly may, by general laws, exempt from taxation:

. . . .

(v) institutions of purely public charity. . . ."

The Legislature has provided:

"The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:

. . . .

"(c) All . . . institutions of learning, benevolence, or charity . . . with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by public or private charity; provided, that the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose. . . ." Act of May 22, 1933, P. L. 853, Article II, section 204, as amended, 72 P.S. 5020-204(c)."

Although it is never desirable to have a record that is unclear on vital points, nevertheless it is refreshing here to see the appellee keeping its books, operating its school, and presenting its case in a manner to portray the actual facts as it considers them, confusing as they may be, rather than setting up its books, operating its school, and presenting its case to "achieve" a clear case of eligibility for complete tax exemption. By doing this, it has eliminated from exemption considerable property that might otherwise have qualified. Certainly with regard to the property that has been declared exempt by the court below, appellee has clearly met its burden.

Decision affirmed.