# Christian Literature Crusade, Inc., Appellant, *v.* Board for the Assessment and Revision of Taxes of Montgomery County, Appellee.

Argued October 9, 1974 and reargued March 3, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Jerome B. Nulty,* for appellant.

*John F. Christie, III,* with him *High, Swartz, Roberts & Seidel, Robert J. Johnson* and *Butera & Detwiler,* for appellee.

OPINION BY JUDGE WILKINSON, NOVEMBER 15, 1974:

We need not detail at length the assessment history of the 20 acres and the improvements thereon erected, owned by appellant since 1952, a portion of which has been declared to be taxable. Very briefly, it was all tax exempt until August, 1970, when it was removed from the exempt rolls and all placed on the rolls of taxables. On appeal, the Board for the Assessment and Revision of Taxes placed one of the buildings, known as the Community Building, and one acre of ground on the tax exempt rolls "due to its being used for religious purposes." On appeal, the lower court affirmed the tax exempt status of the Community Building and its one acre curtilage and, in addition, removed the Administration Building and three acres of ground as its curtilage from the tax rolls and placed them on the tax exempt rolls. This left six buildings, each with one acre of ground and approximately 11 acres of additional land on the tax rolls. This appeal followed.

There is no question but that appellant qualifies as an institution of purely public charity within the intendment of Section 2(a)(v) of Article VIII, of the Pennsylvania Constitution. The sole issue is whether the six remaining buildings and the remaining acreage qualify

as "real property of such institution which is actually and regularly used for the purposes of the institution" as required by the same constitutional provision. Further, this remaining portion of the property must qualify under the provisions of the General County Assessment Law, Act of May 22, 1933, P. L. 853, Article II, Section 204, *as amended*, 72 P. S. §5020-204 (Supp. 1974-1975), which provide that the grounds must be "thereto annexed and necessary for the occupancy and enjoyment of the same."

The facts are ably, briefly, and accurately summarized by Judge HENRY of the court below as follows:

"The factual context is substantially undisputed. Christian Literature Crusade is a nonprofit corporation engaged primarily in the publication and distribution of literature propagating concepts of Christian religious thought. The organization is not affiliated with any particular religious sect, but publishes and distributes nondenominational Christian literature in the United States and in thirty-four (34) foreign countries. The Crusade was formed in 1941 in England as a branch of the World Evangelization Crusade, Inc., an organization established to train nondenominational Christian missionaries for work in other countries. The Crusade was incorporated as a separate entity in 1957. Its charter purpose is stated as follows:

'. . . . . to promote literacy programs, survey and distribute existing supplies of religious literature in any or all languages, organize the writing or translating of manuscripts and utilize all means of literature distribution in any part of the world as a service to missionary agencies.'

"The subject property contains approximately twenty (20) acres located along Pennsylvania Avenue in Whitemarsh Township. There are eight (8) buildings on the tract. The Community Building, referred

to above as that portion of the property to which the Board granted an exemption, contains an auditorium, lounge and dining room. The auditorium and lounge are used for religious and nonreligious community activities. Devotional services are conducted in this building on four (4) or five (5) days each week. The dining room is used by members of the staff and occasionally by guests. There is no established charge for meals (meals are provided to guests without charge), but a contribution of Four Dollars ($4.00) per week for each adult and Two Dollars ($2.00) or Three Dollars ($3.00) per week for each child is standard. The dining room is not open to the public.

"A second building on the property contains administrative offices, a print shop and a book store in which literature produced by the appellant is available for purchase by the general public and by religious organizations.

"The remaining six (6) buildings located on the subject property are used by the appellant for recreational and residential purposes. Such accommodations are believed necessary by the appellant because of the fact that each member of the Christian Literature Crusade is required, as a condition of membership, to reside on the premises as a result, primarily, of the communal traditions of the group.

"As a result, there are approximately forty (40) permanent residents on the property, composed of twenty (20) to twenty-five (25) adult members of the Crusade and twelve (12) to fifteen (15) children. The residents pay no rent or utility charges. Each adult receives a 'basic living allowance' of Sixty Dollars ($60.00) per month, in addition to Thirty Dollars ($30.00) per month for each child up to three (3) children. There is no additional allowance for families with more than three (3) children. Finally, in addition to the dining facilities available in the com-

munity dining room, the residential buildings are equipped with kitchen facilities."

To these facts we would add that the uncontradicted testimony clearly shows that the reason the members and their families are required to live in the residences provided is that during their residencies in these accommodations, they are trained in the communal life which is required by the appellant when they "graduate" from this training program and are sent to overseas stations to continue printing and distributing literature. Further, some 100-200 visitors annually visit this installation to learn of the program and are housed in these residence halls.

The matter for decision is a very narrow one indeed. Are the residents' facilities "necessary" for the proper functioning of what is admittedly purely public charity? Certainly they are used for the purposes of charity and certainly they are "thereto annexed." It is a matter of interest that the leading case dealing with tax exempt status of residences used in connection with educational programs was decided by the Supreme Court of Pennsylvania in 1962 with an exhaustive opinion by our Chief Justice, then Justice Jones, and involved was the residence of the Chancellor of the University of Pittsburgh, with slightly over an acre of ground located two and a half miles from the University campus. This was ruled to be tax exempt. *University of Pittsburgh Tax Exemption Case,* 407, Pa. 416, 180 A. 2d 760 (1962). The dissent of Justice Musmanno was based solely on the fact that the residence and its curtilage did not have any "geographical, cultural or pedagogical kinship with the University." By all of the standards set forth in both the majority and dissent in that controlling case, the uncontradicted evidence clearly establishes the tax exempt status of these residences. This uncontested and uncontradicted testimony cannot be disregarded by the court below. Indeed, in that case there was no showing that the

Chancellor was required to live in the residence as is the instance here. Further, that record showed that the University had had a tax exempt residence for its Chancellor much nearer the campus, and it was the new Chancellor who selected and induced the University to buy the residence in question. Quite the contrary here, which makes this case more clearly qualify for the rule that whether the property is necessary is first and foremost a question for these managing the charity. *Shadyside Hospital Appeal,* 207 Pa. Superior Ct. 261, 218 A. 2d 355 (1966). For other cases holding residences of faculty and students engaged in an educational program properly tax exempt, see *White v. Smith,* 189 Pa. 222, 42 A. 125 (1899); *County of Northampton v. Lafayette College,* 128 Pa. 132, 18 A. 516 (1889); *Parmentier et al., Trustees', Appeal,* 139 Pa. Superior Ct. 27, 11 A. 2d 690 (1940); *Meadville City v. Allegheny County College,* 131 Pa. Superior Ct. 343, 200 A. 105 (1938).

If the "real nub of this controversy is the use to which the residence" is put, as was stated in the *University of Pittsburgh* case, *supra,* and if a Chancellor's residence which is two and a half miles from the campus, purchased at his request, in which he is not required to live, and used only incidentally and occasionally for University purposes, qualifies for tax exemption as being necessary, surely the residences in the instant case must.

It is important to keep in mind that it is undisputed and uncontested that these apartments and dormitories are occupied primarily by the members of the Christian Literature Crusade, both "instructors" and "students", and to a minor extent by visiting missionaries who are there to observe and learn the activities of the Crusade. These are not ordinary quarters for ordinary employes, although even such quarters have sometimes been declared tax exempt. *See Shadyside Hospital Appeal, supra,* and *Allegheny General Hospital v. Allegheny County*

*Board of Property Assessment Appeals and Review,* 207 Pa. Superior Ct. 266, 217 A. 2d 796 (1966).

As to the additional acreage to be exempted, the uncontradicted evidence that since there is no public sewage system available, local zoning requires two acres for the on-site disposal of sewage from each "building in which individual sewage, cesspool type arrangements are in force," it seems to us that this minimum requirement of the zoning law more than adequately justifies the reasonableness of exempting the entire 20 acres.

The difficulty of applying the test of necessity is well exemplified by this Court's two previous decisions on this subject, *The Lutheran Home at Topton, Pennsylvania Tax Appeal,* 6 Pa. Commonwealth Ct. 199, 293 A. 2d 888 (1972), and *E. Pa. Conference Tax Exemption Case,* 2 Pa. Commonwealth Ct. 281, 278 A. 2d 180 (1971), neither of which is determinative here.

The decision of the lower court is reversed insofar as it denies tax exemption to any of the property in question, and the appeal of Christian Literature Crusade, Inc., claiming tax exemption status for its tract of approximately 20 acres and the improvements thereon erected, is sustained.

DISSENTING OPINION BY JUDGE ROGERS:

I dissent.

Article VIII, Section 2 of the Constitution of Pennsylvania, adopted in April of 1968, provides pertinently for the exemption of public charities as follows:

"Institutions of purely public charity, *but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution.*" (Emphasis supplied.)

The words to which we have given emphasis were clearly intended to curb the disposition of some Boards of Assessment and Revision of Taxes and courts, out of sympathy with the general aims of charitable institu-

tions, to grant exemptions from local taxes for property which had only a peripheral relationship to charitable purposes—and this, despite the statutory requirement that such exemptions should apply only to property "necessary for the occupancy and enjoyment" of the exemption afforded by former Article IX, Section 1 of the Constitution which empowered the General Assembly to exempt simply institutions of public charity. The instant decision is a reversion to the same practices so harmful to the local tax base which the new provision of the Constitution was intended to curb.

To use the adjectives of the president of Christian Literature Crusade, Inc., the "principal" and "essential" activity in which the appellant is engaged on its property is the production and dissemination of religious literature. It seeks exemption for 20 acres on which it has erected six residences occupied by about 40 persons, 12 to 15 of which are children of the occupants. The adults who live in these residences are members of appellant nonprofit corporation who, to put it simply, work on the place either in the print shop, the sales room, or in providing minor maintenance and security. Each of the adults is paid $60 per month and provided free living quarters and food at minimal, if not nominal, charge. The adults are on the property because the rules of Christian Literature Crusade, Inc. require them to live communally. There is not a scintilla of evidence that any activities relating to the "principal" and "essential" purposes of the landowner are conducted in these dwellings or that housing off the grounds is not available. Neither is there evidence that the literature could not be printed and sent out by persons regularly engaged in that business. The dwelling houses in question are obviously not "actually and regularly used" for the appellant's purpose of providing religous literature as the Constitution provides, nor are they "necessary for the occupancy and enjoyment" of the print shop and audi-

torium building, which the Board of Assessment and Revision of Taxes of Montgomery County, most liberally in the case of the auditorium, exempted.

All of the authorities cited by the majority in support of its decision predate the 1968 amendment to the Constitution and are factually dissimilar. The two cases principally relied on are clearly distinguishable. The *University of Pittsburgh Tax Exemption Case*, 407 Pa. 416, 180 A.2d 760 (1962) involved the residence of the Chancellor used to "receive and entertain student organizations, members of the faculty administrative staff, alumni, donors, members of the Board of Trustees, [etc.]." As we have noted, the employes' residences here are used only as residences. *Shadyside Hospital Appeal*, 207 Pa. Superior Ct. 261, 218 A.2d 355 (1966), concerned a residence for nurses, the presence of some of whom at the hospital at all times was necessary to its functioning. There was further in *Shadyside* testimony that the nurses' residence was necessary to the provision of hospital care.

The instant record establishes that the only reason the workers live on the property is a rule of the organization. This is no basis for exemption.

I would affirm the order of the lower court.

PER CURIAM                ORDER

Now, March 12, 1975, after reargument in the above appeal, the opinion of the Court issued November 15, 1974, is affirmed, to which opinion Judge ROGERS dissents by his dissenting opinion of the same date.