## Pa. Conference of the Pentecostal Holiness Church v. Mercer County Board of Assessment Review

*David Goodwin*, for petitioners.
*Thomas M. Miller*, for respondent.

FORNELLI, *J.*, September 30, 1982—This is an appeal from the decision of the Mercer County Board of Assessment Review by the Pennsylvania Conference of the Pentecostal Holiness Church, a Pennsylvania non-profit corporation. The board's decision held all of petitioner's 82 acres in Delaware Township, Mercer County, Pa., to be taxable with the exception of its tabernacle building and 1 acre of land.

Petitioner contends its all-purpose building is tax exempt as a meeting house where regularly stated religious worship occurs; and in any event, that all of its buildings and property, with the exception of one privately-owned trailer situate on the property, are exempt as a public charity.

The tax liability of all real estate is the rule and exemption from taxation is the exception: Four Freedoms House of Philadelphia, Inc. v. City of Philadelphia, 443 Pa. 215, 279 A. 2d 155 (1971).

The burden of proof rests on petitioner to establish that it comes within the statutory exemption to real estate taxation: *Wayne County Board of Assessment v. Federation of Jewish Philanthropies*, 43 Pa. Commw. 508, 403 A. 2d 613 (1979).

Petitioner's claims of exemption are based on the Fourth to Eighth Class County Assessment Law, May 21, 1943, P.L. 571, art. II, Section 202, as amended; 72 P.S. §5453.202(a)(1) and (3). We shall consider each claim separately.

I

Petitioner's claim for exemption of its all-purpose building is based on 72 P.S. §5453.202(a)(1):

"(a) The following property shall be exempt from all county, borough, town, township, road, poor, county institution district and school (except in cities) tax, to wit:

(1) All . . . meeting-houses or other actual places of regularly stated religious *worship*, with the ground thereto annexed necessary for the occupancy and enjoyment of the same." (Emphasis added.)

Subparagraph (b) of the same section provides:

"Except as otherwise provided in clause (11), subsection (a) of this section, all property . . . other than that which is *actually* and *regularly used and occupied* for the purposes specified in this section . . . shall be subject to taxation." (Emphasis added.)

Petitioner has not met its burden to establish its all-purpose building within this exemption. The all-purpose building, true to its name, is used for a variety of purposes: it is the dining hall for three meals a day; the kitchen for preparation of all

meals; and the place where classes, seminars, lectures, commitee, and auxiliary meetings are held. Some worship services occur there, and once a year a retreat for the Conference Auxiliary is held from Friday evening to Saturday noon, which includes worship services and seminar.

It is the only building on the 82 acres with heat. Educational classes are held there 8 to 9 hours daily when the property is in use.

The testimony establishes (and petitioner concedes) that the primary purpose of the all-purpose building is for teaching and education. The worship that sometimes occurs there is incidental to its other uses.

Is instruction and education worship within the meaning of §5432.202(a)(1)? Obviously, education is not worship. It may be preparatory to more meaningful worship and one may reinforce the other; but it is neither necessary to nor identical with the act of worship. Religious instruction given and received is religious activity, and both are religious expressions. But learning about God is not homage and devotion to God, at least not under the strict construction required to be applied to the statutory language of tax exemptions.

Statutory exemptions from real estate taxation must be strictly construed and one who claims an exemption must show his case is clearly within it: In Re: Appeal of the Holland Universal Life Church of Love, 38 Pa. Commw. 529, 394 A. 2d 665 (1978).

Worship connotes offerings, adoration, meditation and prayers of thanksgiving and petition. Education is not strictly a part thereof. The aim and purpose of instruction and education is to increase knowledge. The aim and purpose of worship is devotion. Thus, the building is not an "actual place of regularly stated religious worship" within Section

5432.202(a)(1), which is "actually and regularly used and occupied" for worship as further required by Section 202(b): Solebury Township Board of Supervisors v. Bucks County Board, 17 Bucks 545 (1968).

The exemption of Section 5453.202(a)(1) does not apply to buildings established for secondary schools and lectures: Mullen v. Erie County Commissioners, 85 Pa. 288, 291 (1877). To qualify for tax exemption as a place of worship, the taxpayer must show that the property is used exclusively for religious worship: In Re: Appeal of the Holland Universal Life Church of Love, supra; see also, Appeal of Open Door Baptist Church, 63 Pa. Commw. 292, 437 A. 2d 1291 (1981).

"Actual use" is used in the statute and means exclusive use and not mere concurrent or alternative use for worship: In Re: Appeal of Holland Universal Life Church of Love, supra, at 667 held that although a minister conducted regular religious services in the church parsonage this did not exempt it from tax under Section 5432.202(a)(1). See also, Philadelphia v. Barber, 160 Pa.123, 127, 28 Atl. 644, (1894).

In In Re: Petition of Second Reformed Church of the City of Harrisburg, IV Dauphin 208 (1901) a parsonage in which Sunday school classes were conducted and the Ladies Mite Society met was not exempt as a regular place of worship. The court found that buildings used for church purposes such as Sunday schools, lectures and parsonages are not exempt as places of worship.

The court in Solebury Township Board of Supervisors v. Bucks County Board, 17 Bucks Co. L. Rep. 545 (1968) held that a church's multi-purpose building whose prime purpose was preparing and dispensing food was not tax exempt even though it

contained a baptistry and was used during the winter for worship services.

The parties agree that petitioner's tabernacle and one acre of ground incident thereto qualify as an actual place of regularly stated religious worship and are exempt from taxation. However, the balance of petitioner's land and buildings do not so qualify and therefore, is not exempt as a place of worship. See Layman's Weekend Retreat League v. Butler, 83 Pa. Super. 1 (1924).

## II

Petitioner also asserts that all of its land and buildings in Delaware Township are tax exempt as a public charity under Section 5432.202(a)(3):

(a) The following property shall be exempt from all county, borough, town, township, road, poor, county institution district and school (except in cities) tax, to wit: . . .

(3) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence or charity . . . with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose: Provided further, That the property of associations and institutions of benevolence or charity be necessary to and actually used for the principal purpose of the institution and shall not be used in such a manner as to compete with commercial enterprise."

As with other exemptions, this subparagraph

places the burden of proof on the taxpayer to establish itself within the charitable exemption: Homewood-Brushton Citizens Renewal Council v. Department of City Treasurer, 27 Commw. 630, 367 A. 2d 405 (1976).

The testimony established that the Pentecostal Holiness Church is an international religious denomination with branches in Mercer County. The local Pentecostal Holiness Churches are supervised by a conference board, which is a non-profit corporation and is petitioner here.

Petitioner is the owner of the 82 acres in Delaware Township and has made improvements to it. It presently contains a tabernacle, two mobile homes, a house, a barn, an all-purpose building, two restrooms, eight cabins, and a ninth cabin building which serves as a dispensary and administration office. There is also a ballfield. The premises is generally known as the camp and The Conference uses the camp as long as weather permits. It has plans to sufficiently winterize it so that it may be used all year round.

The Conference presently operates the camp for three one-week sessions during the summer. The first two weeks are for a youth camp and the third week for adult or family camp. Attendance is dominated by members of the Pentecostal Holiness Church and the purpose of the youth and adult camp programs is to provide moral and religious instruction, recreation and an opportunity to worship. The instruction and prayer is according to the religious tenets of petitioner.

The youth camps, as are all activities on the premises, are open to the general public and not restricted to Church membership. The only limitation on the youth camps is as to age. Twenty to 25 percent of the youths attending have no connection

with the Pentecostal Holiness Church. Youths of Catholics and other Protestant denominations attend the youth camp. Brochures for the camps are not limited in distribution to the Conference's Churches and advise that all are welcome without regard to their race, color, religion or creed. A fee of $35 per week is charged and if any youth cannot pay it, that fee is paid by petitioner, through sponsors or by donations.

When the facilities are used for adult camp, a donation is requested and a charge asked for meals, although not required from those unable to pay. It is estimated that approximately 453 free meals were served to adults during the 1981 session. No child or adult who desires to attend the camp is refused because of inability to pay.

The money received is inadequate to cover the expenses of the youth and adult camps and all monies received are used exclusively for the camp and the campground. The Conference has a substantial deficit each year from the camps and must support it from its general revenues.

The youth camps average about 90 students per day and the adult camp averages between 250 and 300, although they have had as many as 750 in attendance.

The camp receives food commodities from the Commonwealth for its activities, a prerequisite of which is that it be approved each year by the state as being in compliance with all civil rights laws and open to all without regard to race, creed, color or religion.

In the spring of each year, an orphanage and college of the Church visit the camp for retreats. The orphanage, Falcom Childrens Home, is located in North Carolina and although affiliated with the Pentecostal Holiness Church, it accepts youth of all

races and religions without limitation. No charge is made for the use of the orphanage. The colleges also are open to all regardless of race, religion, color or creed.

The Women's Auxiliary of the Pennsylvania Conference also uses the premises each year at its yearly retreat. The Auxiliary is not limited to members of the Pentecostal Holiness Church and 15 to 20 percent are non-members. The primary aim of the Auxiliary is to raise funds for the orphanage, the church schools and for the church's missionaries throughout the world.

In addition to worship, the Auxiliary's retreat includes seminars and panel discussions as to the organization and planning needs of the Auxiliary's money-raising efforts.

The barn on the premises is used for storage of pews from the tabernacle and household items such as stoves and furniture, which are given to the Conference which distributes them to needy families without regard to their religious affiliation or race. These items are donated by the general public and not just by those affiliated only with the Pentecostal Holiness Church.

Petitioner's testimony establishes that approximately one-half of the acreage is not used for any purpose incidental to the camp, although all of the buildings are so used.

The Conference's purpose in running the youth and adult camps is to win converts to Jesus Christ. Although they do not limit those in attendance to members of their faith, the main purpose of the camps is to provide religion and foster a relationship with Christ. Counseling and services are based on the Pentecostal Holiness Church doctrine, and the religious activities during the camp expose the

people to the religious beliefs of the Pentecostal Holiness Church.

Because the doctrine, services, and counseling are that of the Pentecostal Holiness Church and the implied hope is to convert some to the beliefs of the Pentecostal Holiness Church, it is urged by the Mercer County Board of Assessment and Review that petitioner is not eligible for charitable exemption.

Organizations with religious purpose may still qualify for an exemption as a "purely public charity." Appeal of Laymans Weekend Retreat League, 21 Commw. Ct. 175, 343 A. 2d 714, 716-717 (1975).

This is a broader and different exemption from the exemption for places of public worship considered in the first part of this opinion: Appeal of Parmentier, 139 Pa. Super. 27, 11 A. 2d 690 (1940).

The words "charity" and "public charity" as used in the statutory exemption must be given a liberal interpretation: In Re: Tax Appeals of United Presbyterian Homes of Presbytery of Huntingdon, 428 Pa. 145, 152, 236 A. 2d 776 (1968).

Petitioner has carried its burden to establish that the use and object of at least part of its premises qualifies for exemption as a public charity within the act.

There is no question or challenge by the County Board that petitioner meets that part of the statutory exemption requiring all revenue derived from the use of the premises be applied to support the facilities thereon and that the services be rendered in a charitable eleemosynary fashion. See, In Re: Doctor's Hospital, 51 Pa. Commw. Ct. 31, 414 A. 2d 134, 137 (1980).

Nor does an institution lose its privilege as a public charity because it is organized, directed or car-

ried on by a particular church denomination or religious order: Dougherty v. City of Philadelphia, 139 Pa. Super. 37, 11 A. 2d 695, 697 (1940); White v. Smith, 189 Pa. 222, 42 Atl. 125 (1898); The Inner Mission Society of the Evangelical Lutheran Church v. City of Reading, 29 Burks 144 (1939).

It is urged by the county that because petitioner's format is sectarian, and the liturgy and doctrine taught is the Pentecostal Holiness Church's, and there is a desire to win converts to that Church, this prevents it from being a public charity.

This ignores the fact that the bringing of an indefinite number of people under the influence of religion is a proper object of a public charity: Fire Insurance Patrol v. Boyd, 120 Pa. 624, 645, 15 Atl. 553 (1888).

The true test of a public charity is the object sought to be obtained Id.; and so long as its ultimate object is to help an indefinite number of persons without regard to their religious beliefs, it is a public charity: White v. Smith, supra.

The county's emphasis of the sectarian nature of the religious activities and worship at the camps ignores the usage of the premises by the Ladies Auxiliary in relation to plan its fund-raising activities. It ignores the recreational activities of the camps and ignores the storage of items donated and distributed to the needy. It also fails to take into account that the 20 to 25 percent of those attending the youth camps are not members of the Pentecostal Holiness Church.

To stress the sectarian aspects of the usage of the premises is really to argue that the purpose for which the property exists is not one of sufficiently general and substantial public benefit to justify tax exemption. See, Fox, "The Uneasy Law of Real Estate Tax Exemption," 39 U. Pitt.L.Rev. 175, 259

(1977). However, to bring an indefinite number of people under the influence of religion is and always has been viewed in the country to be a substantial and general benefit to society.

Methodist Episcopal Church v. Philadelphia, 266 Pa. 405, 109 Atl. 664, (1920) dealt with the issue of whether fostering of religion in denominational form prevented tax exemption and held it did not. The work of the Methodist Church Board in spreading the Christian religion by establishing and extending the influence of the Methodist Episcopal Church, and by buying and erecting Methodist houses of worship and by prosecuting the mission work of the Church was tax exempt. The court pointed out that, as here, attendance to the church buildings was not limited to members of the Methodist faith and its members served all without discrimination.

It is obvious that petitioner's use of the premises is not carried on for the benefit of the clergymen of the Pentecostal Holiness Church or for the other members of that denomination or for the Church itself. It is obviously a financially losing proposition. It may incidentally increase the church's membership but the overwhelming majority of those attending are already members. Its object is to educate, extend, reinforce and intensify the principles of Christian religion of those attending and those with whom they will subsequently come in contact.

Donahue's Appeal, 86 Pa. 306, 312, (1878) defines charity as something "done out of good will; benevolent; a desire to add to the happiness or improvement of our fellow human beings." All the uses of the property, including those of the Auxiliary and the camps, qualify petitioner under this definition of charity.

Charity is defined in The Probate, Estates and Fiduciaries Code at 20 Pa.C.S.A. §6101 to include the advancement of religion. Comment (b) to Section 368 of The Restatement (Second) of Trusts, which is the source of the definition of charity in Section 6101, points out that at common law in England and in the United States "it is agreed that . . . the advancement of education and of religion, . . . fall within the concept of charity."

If sectarian organization and doctrine and the hope to convert persons to that denomination's religion disqualified a religious activity from being a tax exempt public charity, then most missionary organizations could not qualify. That, however, is not the case. See, Appeal of West Indies Mission, 387 Pa. 534, 128 A. 2d 773 (1957); Board of Home Missionaries and Church Extension of Methodist Episcopal Church v. Philadelphia, supra.

A society whose missionaries were sent to establish Sunday schools, to actively seek converts and to distribute its literature was held to be a tax exempt public charity in American Sunday School Union v. City of Philadelphia, 161 Pa. 307, 313; 29 A. 2d 26, 33 (1894).

Episcopal Academy v. Philadelphia, 150 Pa. 565, 25 Atl. 55 (1892) granted a tax exemption as a public charity to what the court considered a denominational school which gave preference to its denomination, though excluded no one by reason of denomination.

The county's reliance upon Appeal of Layman's Weekend Retreat League of Philadelphia, 21 Pa. Commw. 175, 343 A. 2d 714 (1975) is misplaced. It holds that where the dominant purpose of the usage is worship, it cannot qualify for the broader charitable exemption. As discussed in the first issue of

this opinion and as seen by its several uses, the dominant purpose of this property is not worship.

This is not a case where the admittance, benefits or activities are limited to sectarian membership such as in Four Brooks Reformed Episcopal Bible Conference v. Bucks County Board of Assessment, 16 Bucks 38 (1966). There, no individual was permitted to utilize the facilities of the camp unless he was a participant in The Conference. The director of that camp would not permit any programs at the camp which were in conflict with the teachings of the Reformed Episcopal Church. Further, it restricted benefits to members of its religious body.

It has been long recognized that if the benefits of the activities, though charitable in nature, are restricted to certain religious bodies, it cannot qualify as a tax exempt public charity. See Friends' Boarding Home v. Bucks County Commissioners, 80 Pa. Super. 475, 478 (1923).

The following cases are more informative: Pinebrook Foundation, Inc. v. Commissioners of Monroe County, 18 Monroe 7 (1956) held that a bible conference's summer camp was a public charity and therefore, tax exempt. The county board argued there could not be a tax exempt charity where the avowed purpose of the use was to teach the fundamentalist view of the Bible to those attending. The court disagreed relying on the facts that the premises were available to all regardless of race, creed or color, that the religious training was free, and that it brought an indefinite number under the influence of religion.

Central Pennsylvania Bible Conference Society of United Evangelical Church v. Union City, 24 Dist. 392 (1914) held that real estate used by the United Evangelical Church for an annual four-

week camp meeting for worship services and study of holy scriptures according to the doctrine of the Evangelical Church was exempt as a public charity. Though attended predominantly by members of its church, the meetings were open to all denominations and the purpose was found to be educational and religious. See also, Pittsburgh Bible Institute v. Board of Property Assessment, 405 Pa. 297, 175 A. 2d 82, 84 (1961).

Eastern District Council of the Assemblies of God v. Zendt, 42 D. & C. 235 (1941) exempted as a public charity 47 acres which were used for camp meetings four weeks per year and occupied by the bible institute of the church.

The uses of petitioner's land being eleemosynary in nature, contributing to the general public benefit, and its users and beneficiaries being unrestricted by race, creed, color or religion is a public charity within the meaning of the statute and is, therefore, tax exempt.

Petitioner has not, however, met its burden to prove that all 82 acres are a necessary and integral part of the charitable uses. Section 5432.202(a)(3) requires that the property "be necessary to and actually used for the principle purposes of the institution." The testimony revealed that approximately one half of petitioner's acreage is not used for any purpose incidental to the camp. Therefore, 41 acres of petitioner's land does not qualify for the charitable tax exemptions. See, Pittsburgh Bible Institute v. Board of Property Assessment Appeals and Review, 405 Pa. 297, 175 A. 2d 82 (1961); Christian Literature Crusade, Inc. v. Board of Assessment and Revision of Taxes, 17 Pa. Commw. 63, 328 A. 2d 896 (1974).

Hence, this

## ORDER

And now, September 30, 1982, petitioner's appeal from the decision of the Mercer County Board of Assessment and Review is sustained in part and refused in part. All of petitioner's buildings, with the exception of the privately-owned mobile home of the caretaker, Virgil O. Rath, and 41 acres, are exempt from real estate taxation. The remaining 41 acres, not being necessary to and actually used for the charitable purposes of petitioner, are subject to real estate taxation.